**ROGERS, Plaintiff-Appellant, v. ALLIS CHALMERS MFG. CO., Defendant-Appellee.**

Ohio Appeals, First District, Hamilton County,

No. 7063.    Decided May 16, 1949.

454

Joseph F. Kinneary, Timothy S. Hogan, Cincinnati, for plaintiff-appellant.

Sanford A. Headley, James G. Headley, Cincinnati, for defendant-appellee.

**OPINION**

By HILDEBRANT, J.:

Plaintiff sued for damages for injuries sustained on being struck in the eye by a golf ball, which he alleges was negligently driven by an employee of defendant Company, acting within the scope of his employment.

The trial court sustained defendant's motion for a directed verdict based on the opening statement of plaintiff's counsel, after opportunity given to amplify, add to, explain, and qualify the same.

The propriety of such a ruling in a proper case is established in Cornell v. Morrison, 87 Oh St, 215, Cincinnati Gas & E. Co. v. Archdeacon, 80 Oh St, 27. See, also: 39 O. Jur., 883, Section 225, et seq.

By the motion, and for its purposes, the defendant admitted the truth of all the statements plaintiff proposed to establish by evidence.

On giving plaintiff's counsel opportunity to enlarge upon his opening statement, the court directed that it be confined to the question of whether or not the employee involved was acting within the scope of his employment. so as to render defendant Company responsible for his acts.

Plaintiff stated that his proof would show that the Norwood Plant of the defendant company—a nationally advertised

heavy industry, manufacturing heavy machinery and equipment appropriated a sum of money on a yearly basis with which to foster and provide athletic and recreational activities and games for its employees, both intramural and in competition with the teams of other industries; that it employed an athletc director, who, at the request of the Norwood Y. M. C. A., whose stated purpose was to improve industrial relations, paid the Y. M. C. A. the sum of $25.00, and agreed to enter a Company team in an industrial golf league competing against similar recruited teams after working hours; that the Captain of the Norwood Plant team asked one Haas if he would play thereon, which he voluntarily agreed to do; that the green's fees were paid for the players out of the funds appropriated by the Norwood Plant, as stated above; the Norwood Plant also furnished its employees with a T shirt, upon which the name of the defendant company appeared; that after working hours, at about 5:30, P. M., on the day in question, plaintiff was on the Avon Fields Public Golf Course and drove his ball from the 13th tee in a southerly direction toward the green and had approached his drive which came to rest on the left edge of the fairway, and was in the act of selecting a club from the bag which he carried himself in order to make a second shot toward the 13th green; defendant's employee Haas drove his ball from the 14th tee, which hole runs south to north, and whose fairway parallels that of the 13th; he gave no notice of his intention to drive by calling out the warning signal of the game "Fore"; his drive hooked to the left after he hit the ball and on noticing its direction toward plaintiff, the cry of "Fore" was given; plaintiff looked up in the direction from which the cry came and was struck in the eye by the ball; no statement appears in the record as to the distance between plaintiff and Haas, except that a blow such as that hit by Haas will drive a ball at the rate of 110 to 120 miles per hour at its maximum and would traverse the distance separating the two players in something in the neighborhood of two seconds.

Plaintiff contends under that statement the defendant company was engaged in playing golf through its agent and employee. Haas, so that the doctrine of respondeat superior applies to hold defendant company liable for the negligence of Haas.

Defendant contends no cause of action has been stated against it, since Haas at the time and place was not acting within the scope of his employment, hence, the doctrine of respondeat superior does not apply.

Plaintiff relies upon **Ott v. Industrial Comm., 83 Oh Ap, 13,** and other Workmen's Compensation cases. Such cases do not apply.

The right to participate in the Workmen's Compensation Fund is wholly statutory, and is in no way dependent upon the principles of the common law, whereby a master or principal is sought to be held liable for the torts of a servant or agent upon application of the doctrine of respondeat superior. In the Ott case, this Court merely found from the facts that there was sufficient relationship in the activity of the deceased at the time of his death to his employment to justify the conclusion that claimant was entitled to participate in the Fund under the Constitution, statutes, and rules of the Commission. Under the liberal construction required of Workmen's Compensation Laws, a mere causal connection is held to be sufficient to satisfy the statutory requirement that the injury be received in the course of and arise out of the employment. And no inquiry is required or made as to whether or not the injured workman at the time and place of injury was actually acting within the scope of his employment, as required to fix liability under the doctrine of respondeat superior. In such cases where inquiry as to the scope of employment is made, it is not for the purpose of determining that question in the first instance, but only to determine the question of causal connection.

In **Tarlecka v. Morgan, 125 Oh St, 319,** it is stated in the fourth paragraph of the syllabus:

"The expression 'scope of employment' cannot be accurately defined, because it is a question of fact to be determined according to the peculiar facts of each case."

As to the general principles upon which liability rests from a wealth of text and case material, we quote **26 O. Jur, 620, section 598:**

"The liability of one person for damages arising from the negligence or misfeasance of another, on the principle of respondeat superior, is confined in its application to the relation of master and servant, or of principal and agent. In order, then, to permit a recovery, in such case, it must be shown that the relation between the parties sought to be held liable and the person doing the act complained of was that of master and servant, or of principal and agent, in reference to the very act complained of. The maxim 're-

spondeat superior' does not apply where this relation does not exist. The direct coincidence and coexistence of the rule of respondeat superior with the relation to which it belongs is an unvarying test of its application."

Section 599 of the same volume states:

"* * * The mere fact that one is employed by another does not render the latter liable for all acts of the former. The relationship and the master's liability depends upon whether the person who did the injury complained of was acting under his employer's control or direction, in doing the work from which the injury resulted. If the person so acted, he is a servant and the master is responsible; otherwise, there is no such relation and he and not the master, is liable for the injury."

The fourth paragraph of the syllabus in **Clark v. Fry, 8 Oh St, 358,** states:

"The rule of respondeat superior, as its terms import, only arises out of the relation of superior and subordinate, is applicable to that relation wherever it exists, as between principal and agent, or master and servant, is coextensive with it, and ceases when that relation ceases to exist; and the reason of it is to be traced to the power of control and direction, which the superior has a right to exercise, and which, for the safety of others, he is bound to exercise over the acts of his subordinates."

**Section 614 in 26 O. Jur, p. 633,** states:

"The master is not liable for the acts of his servant done outside of his employment. A railroad company whose line crosses a highway is under no obligation to remove from the highway an obstruction placed upon it, at a crossing, by one of its brakemen, without authority of the company, and while acting outside the scope of his employment, even though he did it during the existence of the employment. In the customary legal phraseology, to make the master responsible for the acts of his servant, the act must be done in the scope or course of the servant's employment, that is, under the express or implied authority of the master. Beyond the scope of his employment, the servant is as much a stranger to the master as any third person.

"The master is not liable for the act unless it is done for the purpose, and as a means, of doing what the servant is employed to do, or unless it is part of an actual duty connected with his employment. If an employee goes outside of his work and employment to commit an act of violence, which is not necessary in the performance of his work, the employer is not liable."

And it is stated in Section 615 of the same volume:

"There is a marked distinction between an act done by the servant during his employment, and an act done within the scope of his employment. The master has a right to assign duties to his servants, and no assumption of duties not assigned will bring those duties within the scope of his employment as defined by the master, and when an act is not within the scope of a servant's employment, it is manifest that it cannot be within either the express or implied authorization of the master."

35 Am. Jur., 973, Section 543, et. seq., wherein it is stated: at 974: "Power to control the acts of the wrongdoer, must, of course, have been vested in the defendant at the time of the injurious occurrence."

Whatever its motive and whatever benefit the Norwcod Plant conceived flowed to it. as the result of sponsoring and financing an organized recreational plan for its employees, it seems clear that any participating employee while so engaged would not be acting within the scope of the employment for which he was paid and by which he earned his daily bread. Neither do we consider Haas the agent of the Company in voluntarily playing golf as a form of recreation for himself. He was asked to participate, not ordered so to do, nor could he have been so ordered; he could have refused to play at all, or to drive off the 14th tee after starting to play without being amenable to discipline for violating any of the terms of his employment; the defendant had no control over his conduct on the golf course at all. While identified in some manner with the defendant company by his T shirt, proof of that fact created no inference he was employed to play golf and was at that time. which was after the regular working hours, acting within the scope of his employment. The rules of proof set out in **White Oak Coal Co. v. Rivoux, Admr., 88 Oh St, 18; Sobolovitz v. Lubric Oil Co., 107 Oh St, 204; and Halkias v. Wilkoff Co., 141 Oh St, 139,** are applicable and dispositive of this case.

Plaintiff relies on Lake City Malleable Co. v. Cavanaugh, (unreported—Cuyahoga County Court of Appeals, 1943). There being no opinion and no official report of that case, this Court cannot comment thereon, nor be bound in any manner by it. We distinguish the case of Ackerson v. Jennings Co., 140 Atl. 760 (Conn.) on its facts. The cited Restatement of the Law of Agency, pars. 212, 228, 236, do not seem to apply, but rather reference is made to Par. I, p. 7, Par. 2, P. 11 therein.

The judgment is affirmed.

HILDEBRANT & MATTHEWS, JJ, concur in syllabus, opinion & judgment.

ROSS, PJ, dissents in separate memorandum.

ROSS, PJ, (dissenting):

Judgment was rendered for the defendant upon the opening statement of counsel for plaintiff, upon a verdict instructed by the court rendered upon the motion of the defendant for same.

The plaintiff was given the opportunity to amplify his statement upon **one issue only,** to-wit, that the liability of the defendant was predicated upon the rule of respondeat superior, or as the court stated, the scope of employment or agency.

Such a motion so directed partakes much of the character of a demurrer. In effect, it admits the stated allegations of proposed proof are true, but denies any legal efficacy of such facts to sustain the alleged cause of action of plaintiff.

In **Neckel v. Fox, 110 Oh St, 150, at page 152,** it is stated in a per curiam opinion: "This court is not disposed to give too rigid a construction to the terms employed in the statement by counsel for plaintiff."

In that case, the Supreme Court reviewed a judgment of the Court of Appeals affirming a judgment on the pleadings and opening statement of counsel, and further stated the facts were too "meagerly stated and were very uncertain in vital respects."

That case involved statements of a plaintiff's counsel concerning the liability of a landlord for injuries to a visitor to a tenant. Plaintiff's counsel stated that the defendant was "in full possession of said premises" and retained possession to make repairs   The similarity in general quality of these statements to those herein involved will be later considered.

In **Laundry Co. v. Whitmore, 92 Oh St, 44,** the Supreme Court also reversed a judgment rendered on the opening statement of counsel.

See, also: **39 O. Jur., p. 883, Trial, Section 225.** In Section 227, page 886, Id., it is stated:

"In ruling on a motion to direct a verdict for the defendant on the opening statement of the plaintiff's counsel, the trial court must interpret the statement most favorably to the plaintiff, or, in the language of some cases, must give it the most liberal construction possible in favor of the plaintiff. The truthfulness of the facts stated therein is to be assumed, and a reasonable and liberal construction is to be given the statement so that it may be allowed to stand, in order that the well-known principle that every litigant should have his day in court may be vindicated. To this end the court is required to take into consideration the admissions made in the pleadings in regard to that part of the statement favoring the plaintiff, even though inconsistent with other parts of the statement, and to give the plaintiff the benefit of any reasonable inferences in his favor which are warranted by, or may be drawn from, the facts as stated. Nothing should be taken against the party making the statement."

This Court, in an opinion by Judge Hildebrant, quoted with approval the statement made in **2 O. Jur., p. 1061, Appeal and Error, Section 832,** in the case of **Wainscott v. Young, 74 Oh Ap, 463, at page 465:**

"In **2 O. Jur., 1061, Section 832,** it is stated:
" 'It is reversible error for the court to enter judgment for the defendant because of admissions made by plaintiff's attorney in opening the case to the jury, where such admissions do not include every fact necessary to defeat the plaintiff; or to direct a verdict for the defendant because of the insufficiency of the opening statement of plaintiff's counsel, if such statement is at least as broad as the petition and the petition states a good cause of action; or, if, giving such statement a reasonable and liberal interpretation, it is sufficient to entitle the plaintiff to offer proof of his cause of action and no motion has been made to make either the statement or the petition more clear and definite.' "

Judgment on the opening statement was reversed.

To the same effect, see: **Reitenbach v. Botzum Theatres Co., 18 Abs, 310; Hayes v. Barnes, 32 Abs, 274; Rubin v. Rainbo Baking Co., 36 Abs, 476** (a decision by this Court); **Realty Co. v. Rosen, et al., 47 Abs, 316.**

An examination of these authorities indicates the extreme reluctance of courts to sustain such motions and that only

where it clearly appears proof of a cause of action could not be included within the fullest extent of the allegations of intent to prove, will judgment be rendered adversely to the party making the opening statement.

It will be noted also that the party is not **required** to make such opening statement, but may do so. **Sec. 11420-1 (2), GC.**

An opening statement cannot be intended to be a full development of all the evidence later to be introduced by a party. Its purpose is to outline to the jury the general conception of the party's case.

It is evidence, not statements, which sustain a cause of action. Naturally, if counsel make **admissions** which preclude recovery, a different situation is presented. The penalty of an instructed verdict should be limited to affirmative statements prejudicial to a party rather than to matters of mere omission.

The statement from Emmèrson v. Weeks, 58 Cal., 382, quoted in **Cornell v. Morrison, 87 Oh St, 215, at page 222,** appears to announce the better rule:

"In the case of Emmerson v. Weeks, 58 Cal., 382, this language is used: 'It would be much better not to non-suit on an opening statement, unless it is clearly made and it is plainly evident therefrom that no case can be made out.'"

In the petition it is alleged that "The defendant in its business of advertising its name and products and in the course of maintaining the health and good will of its employees engages in, through its officers, agents and employees games of golf and other athletic contests." It is further alleged that the plaintiff while playing a game of golf was struck by a ball negligently driven by an employee of defendant also playing golf upon the same course, causing certain injuries alleged. It is further alleged that such negligence consisted in a violation of the known rules of the game. The plaintiff states in his petition, "In failing to call 'Fore' which is a word of general warning used in the game."

The defendant in an amended answer admitted it advertised its products, denied that it was engaged in games of golf. Defendant admitted plaintiff was engaged in playing golf and was injured. The amended answer also contains allegations of contributory negligence and assumption of risk. A reply was filed denying contributory negligence and that plaintiff assumed the risk of the defendant's negligence.

Counsel for plaintiff in his opening statement first outlined the general character of the game of golf and the manner

in which it was played. Calling attention to the custom of the game requiring a warning signal to be given prior to driving a ball, and noting that none in the instant case was given until after the ball was struck.

A diagram upon a blackboard was used which is not brought before the court by copy or otherwise. Counsel then described how the plaintiff, proceeding in one fairway, was struck by the ball driven by defendant's employee who was proceeding down a' parallel fairway. Counsel then proceeded to explain why the action was brought against the defendant corporation instead of its employee. He stated "Mr. Haas was an employee of some duration of The Allis-Chalmers Mfg. Co., and that Company had seen fit, so the evidence will disclose, **to engage in,** among other activities, the promoting and sponsoring and, if you please, supervising of athletics to be engaged in by its employees." (Emphasis ours) Counsel further stated:

"There is a fine institution in Norwood, the Norwood Y. M. C. A., which promoted an industrial golf league in the spring of 1947, and it wrote to the industries in Norwood, including among those industries the Allis Chalmers Manufacturing Company, and it said this: We are interested in fostering industrial relations and if the Allis Chalmers Manufacturing Company cares to participate will you tell us what you want to participate in, when you can participate, and will you pay us an entrance fee to cover the type of thing that anybody runs into promoting a league, and the Allis Chalmers Manufacturing company said: Yes, we are interested in participating and we are going to participate in playing golf at five o'clock and here is our $25 entrance fee. And thereupon the Allis Chalmers Manufacturing Company entered into that league a golf team which played under the sweater and under the banner of the Allis Chalmers Manufacturing Company, the sweaters—the 'T' shirts, if you please—with the Allis Chalmers name on them were furnished their own employees who cared to participate in them. Further than that, the Allis Chalmers Manufacturing Company paid the green fees for their own team. I might say that on almost any public golf course there is a given charge. to play. There is a charge at Avon Fields and there was a charge to Mr. Haas playing on this golf course on this Monday afternoon, and that charge was paid for out of the treasury, out of the funds and the money of the Allis Chalmers Manufacturing Company. The name of that golf team found

prominence on the bulletin boards at the golf course and prominence in the newspapers of this community as that particular team, and at the end of the year the company through its supervisor of athletics, who supervises all sorts of athletics, including this, promoted somewhat of a banquet at which they award letters or sweaters and prizes, all bearing the name of the Allis Chalmers Company. And so the second issue which the plaintiff, we feel and hope, will sustain to you is that Mr. Haas in playing golf that afternoon was on or about the business of his employer, the Allis Chalmers Manufacturing Company, and that is why this suit is against this defendant."

Counsel then described plaintiff's injuries, and at this point the defendant made a motion for an instructed verdict. After some discussion, counsel for plaintiff again resumed his statement:—

"The directions from the 13th tee to the 13th green is north to south and from the 14th tee to the 14th green is south to north, and the fairways of said holes border on the same rough grass. The plaintiff was generally in front of and a little to the left of the intended line of flight of Haas' ball—

"The Court: How does that lead up to the question of agency?

"Mr. Hogan: I am a little afraid I didn't go into negligence very much.

"The Court: Don't bother about that.

"Mr. Hogan: If counsel will so agree.

"The Court: You have stated enough on the subject of negligence. Confine it to the relationship existing between the man who hit the ball and the company at the time the accident occurred, whether or not at that time he was in the scope of his employment. In other words, you establish agency.

"Mr Hogan: I don't want to get tripped up on some side point, Judge.

"To go on, Haas was a full-time employee, in the sense of an eight-hour day, five day week, of the Allis Chalmers Manufacturing Company. He was asked in the spring of 1947 whether or not he cared to play golf on a team in the Y. M. C. A. Industrial League at five o'clock.

"The Court: Asked by whom?

"Mr. Hogan: He was asked by Robert Barbeau, who was the captain of the team, and Barbeau had been asked to

make up the team by William Kellar, who was an employee of the Allis Chalmers Manufacturing Company with the title of Supervisor of Athletics of the Norwood Works of Allis Chalmers.

"Mr. Headley, Sr.: Do you mind if I interrupt you?

"Mr. Hogan: No.

"Mr. Headley, Sr.: You can't prove there was any supervisor of athletics out there, if you want to be right about it.

"Mr. Hogan: Kellar will say that is what his title is; that is what he is going to say.

"Mr. Headley, Sr.: That's not the case but he has a right to say that in opening statement.

"Mr Hogan: The Allis Chalmers Company Norwood Works had a section or department or some unit in charge of supervising and promoting an athletic program for the employees of the company. Kellar, in 1947, was in charge of this. In January or February, 1947, he submitted an athletic budget to the higherups of the company and was given an allowance of something in the neighborhood of three thousand dollars to be spent by him in promoting athletic activity among the employees of the company. This activity took two forms, industrial and intramural; the former meaning that teams under the company name were entered in leagues to combat with teams playing under other company names at places not owned by the company, and the latter strictly intramural and on the company premises.

"The Court: What you mean to say is that the other companies participating in the league were also industrial firms.

"Mr Hogan: Yes, your Honor.

"The Allis Chalmers Company spent twenty-five dollars of its own money to enter a team in the Norwood 'Y' Industrial League after the company had received some correspondence from the Norwood 'Y' which asked: 'Could your industry participate at five p. m. in men's industrial golf?' The letter from the Norwood 'Y' which contained this question was addressed to the Allis Chalmers Company, and after the Allis Chalmers Company got it, its athletic director, Kellar, saw to it that a company check for the entrance fee was sent in to the Norwood 'Y', and Kellar also asked Barbeau to captain the team. The Allis Chalmers Company paid the greens fees of this team every Monday. Haas was a regular member of this team which played in the Norwood 'Y' league under the name of Allis Chalmers Company and he was playing when the occurrence took place. In addition he was

wearing a "T" shirt bearing the company name which had been furnished to him by Kelllar and which had been paid for by Allis Chalmers Company. After the accident Haas promptly reported it to Kellar."

Upon which, the Court, without any renewal of the motion by defendant, instructed a verdict for the defendant. These statements, construed as is required by the rules set forth in the authorities hereinbefore noted, are sufficiently broad to include a claim of proof that the defendant requested its employee to play golf for it, and that in doing so, such employee negligently caused the plaintiff's injuries, by violating the rules and customs of the game of golf.

The fact that the employee was asked "whether or not" he would play instead of being ordered to play is sufficient. Compensation for such playing at the request of defendant could have no bearing on liability. Gratuitous employment may develop responsibility. It is stated he did so play upon the defendant's team after such request.

The evidence probably would show the several incidents of this undertaking and might or might not prove liability in the defendant. Strictly construed, the statements of counsel should have been amplified to have definitely detailed the nature of the entire arrangement. This defect, if it is a defect is one of omission, not an affirmative prejudicial admission, preventing recovery.

The allegations were sufficiently broad to include facts which would have justified responsibility in the defendant.

A more serious problem presents itself involving the question of admission of assumption of risk.

It will be remembered, however, that counsel's attempt to amplify this phase of liability was stopped by the Court, who stated that further statement would be **limited** to the elements of scope of employment and agency. What counsel might have said is left to speculation. It is to be noted also that a participant in a game of sport is only presumed to assume the normal risks incident to such sport. He has a right to presume that the game will be played according to rules which form the custom applicable to the game. Counsel had alleged and stated that certain customs and rules of the game of golf were not followed by the employee of the defendant. Suppose that a rule of the game required a player to wait until a player in advance had driven his second ball before the following player could drive off a tee, and by the violation of such rule the advance player was struck. Could it be said the injured player **assumed** the violation of such rule?

It is the normal, reasonable, naturally to be anticipated incidents of a game that one engaged therein, is required to foresee, and if it can be shown that a custom or rule of the game of golf requires a player under the circumstances here prevailing to call out before driving, thus establishing a recognized standard of care, and a failure so to do was the proximate cause of the plaintiff's injuries, it may well be that a jury might properly conclude that such violation of the rules, and failure to exercise such standard of care, so causing injury, constituted actionable negligence.

In **Ivory v. Cincinnati Baseball Club Co., 62 Oh Ap, 514, at page 517** of the opinion it is stated:

"It is a universal principle that when two persons come into such nearness to one another that they, and the agencies under their control, may cause injury to one another a duty devolves upon them to so conduct themselves and so manage the agencies under their control that neither will be injured by failure of the other to conform to the standard of duty, the exact extent of the duty depending upon the attending circumstances."

From the statements made by plaintiff's counsel it appears that a "standard of care" in the playing of golf required a player to call "Fore" **before** playing the ball. This is alleged in the petition and denied in the answer.

Factual questions are thus involved requiring action by a jury.

In **Cincinnati Baseball Club v. Eno, 112 Oh St, 175,** the court draws a distinction between a game of baseball being played in the normal manner and batting practice between games, holding that a jury question is presented whether a spectator assumes risk of injury from the latter situation and as a matter of law assumes risk of a game being played according to national custom.

To the same effect is Douglas v. Converse, 248 Pa. 232, involving the playing of a game of polo.

The fact that the plaintiff is in the cited cases a spectator and not a participant in the games is not overlooked, but it would seem the principle involved is the same, in that in each case—the injured person is only held to assume those risks which are incident to the employment of the standard of care existing in the enterprise. In the one case, the plaintiff assumes the risk of a normal game of baseball or polo, in the instant case, the player assumes the risk of a normal game

of golf, played according to the rules and customs of the game and pursuant to the standard of care involved.

Appellee cites the case of Benjamin v. Nernberg, 102 Pa. Superior Ct., 471. In the opinion in that case at page 475, it is stated:

"There was no duty, under the facts of this case, on defendant to warn plaintiff of his intention to play. We cannot see that defendant was at fault or that he **disregarded any rule or custom of the game.**" (Emphasis ours.)

In this cited case, the plaintiff was struck in the face while putting on a green by a ball driven by a player on another fairway. Later in the opinion, the Court say:

"Having already decided that there was no duty on defendant to warn plaintiff of the intended play, it follows that, if plaintiff was struck by a ball driven by defendant, the plaintiff had assumed, as a matter of law, the risk of injury resulting from his own participation in the game he and all the others were then playing."

In the cited case, as in the instant case, the claim that the rules of the game of golf required warning previous to driving the ball was denied. Certainly, neither the trial court nor this court can take **judicial notice** of the rules and customs or the standards of care of the game of golf. Such matter would require evidence as to the standard of care required. **Englehardt v. Philipps, 136 Oh St, 73.**

In Toohey v. Webster, 97 N. J. Law Rep., 545, liability was imposed upon a player who injured a caddy employed by another player, where customs of the game were ignored by the defendant player. This case is said not to be in point in Benjamin v. Nernberg, supra. To the same effect as the last case is the decision of this Court in **Gardner v. Heldman, 82 Oh Ap 1.**

For the reason that the statements of counsel for plaintiff were broad enough to include proof showing that an employee of the defendant, at its request, acting for it, and within the scope of his employment or agency caused the plaintiff injury, and because the court unduly limited such statement upon the issue of contributory negligence or assumption of risk, and because in such statement, as was permitted, the plaintiff was not shown to be guilty of contributory negligence or to have assumed the risk causing his injury, it is my opinion that the judgment of the trial court should be reversed and the cause remanded for further proceedings.