CASSELS, Respondent, v. H. W. CASSELS CO., et al,
Appellants.

(242 N. W. 587.)

(File No. 7257. Opinion filed May 21, 1932.)

*Williamson, Smith & Williamson,* of Aberdeen, for Appellants.
*Fletcher & Fletcher,* of Aberdeen, for Respondent.

WARREN, J.  Claimant, Leon H. Cassels, was injured at 5 o'clock in the afternoon, on Saturday, November 24, 1928, while trying to dislodge some corn fodder in a shredder.  Notice was given and a claim filed with the industrial commissioner.

Proceedings were instituted, and by consent of the parties a trial was had before the industrial commissioner, who at the conclusion thereof found for the defendants and entered findings of fact and conclusions in which he found that, at the time of the injury to Leon H. Cassels, he was in the employment of H. W. Cassels of Groton, S. D., as a farm laborer, and had been so employed at various times for several years prior thereto, and that he was engaged in shredding corn at the time the accident happened.  He also found that, prior to the date of the accident, H. W. Cassels had been conducting his farming operations under the provisions of the Workmen's Compensation Laws, and that the policy had lapsed on the 16th day of November, 1928.  A conclusion of law was made to the effect that the injury suffered by claimant, Leon H. Cassels, arose out of his employment by H. W. Cassels, an individual, as a farm laborer, and at the time of the injury he was not operating under the Workmen's Compensation Laws of the state of South Dakota.  A denial of award was

thereafter entered by the industrial commissioner and an appeal taken to the circuit court. It was tried in the circuit court, based upon the record as certified from the industrial commissioner. The circuit court made complete findings of fact, conclusions of law, and a judgment reversing the industrial commissioner's findings and denial of award, allowing damages to the claimant for his hospital expense, medical services, and $15 a week for a period of two hundred weeks. Thereafter the record of the proceedings was prepared and settled, a motion for new trial made, which was denied, and an appeal perfected to this court.

Leon, the claimant, is the son of one H. W. Cassels. The plaintiff's father and mother are majority stock owners in a machinery implement corporation operating under the name of H. W. Cassels & Co. They own three-fourths of the stock. A Mr. Hoy owns the other fourth interest. Their general farm implement business is located at Groton, S. D. It carried employers' liability insurance with the defendant United States Fidelity & Guaranty Company. The injury to Leon took place on his father's farm near Groton, S. D.

It would appear from the evidence that plaintiff had been engaged for a period of some eight or ten days on said farm shredding corn. The claimant, however, contends that he was not engaged in shredding corn, but was engaged in repairing an old worn-out and dilapidated corn shredder, that the repairs were brought out from the implement company, and that he was working for the corporation and not in the interest of his father upon said farm as a farm laborer. There were four men in the crew operating the shredder. The last load of corn that they intended to shred was being run through when the shredder became clogged with cornstalks. Leon's left arm was caught in the rollers and injured so that amputation at the elbow was necessary.

It is appellants' contention that Leon was engaged in operating a shredder upon his father's farm, and that he had been engaged in these shredding operations from eight to ten days. Two hired men hauled bundles. Jim Jay and the claimant operated the machine, including the running of the engine, supervising the shredder, and feeding the shredder. Leon stated that he never at any time fed the shredder, and that he did not operate the engine, and that his sole and only activity during the time of the

shreddin · was to handle a wrench and repair the machine. A witness testi ed that Leon was there all of the time that the work was being doi ;, and that he was working around the shredder doing what he could. This is denied by the claimant, but he admits that the shredc ·r was never operated when he was absent, and that they were just  iishing up the last load of corn at the time the injury took place.

There is some evidence to the effect that the corporation intended to sell the shredder, and that they were repairing it, and that certain prospects had looked at it with the view of buying it. There is testimony in the record that the claimant and Jim Jay spent some eight or ten days repairing the shredder. There is also the further facts that the corporation furnished the repairs. That the motives in giving such testimony might be questioned by the trier of the facts and bear upon the probability or improbability of the claimant's presence for the purpose of repairing the shredder or for the purpose of participating in the shredding of the corn on his father's farm seems quite likely.

The corporation books were introduced, it seems, as evidence for the purpose of showing the employment of the claimant by the corporation. The record of said book entries presented sheds but very little light to us, but may have been of considerable assistance to the trier of the facts in connection with the oral testimony given as to how the books were kept and at what time the entries were made.

Claimant contends that whenever he was not engaged in threshing or operating his own farm that he was employed by the corporation, and that he was paid $120 per month; that he worked for the corporation during the summer, the work consisting of the usual work around an implement warehouse and sales agency of farm implements, as a salesman, repairman, and setting up machinery. In the testimony of the father, H. W. Cassels, concerning the corn shredder and Leon's connection, we find a statement that undoubtedly carried great weight with the trier of the facts. It is as follows: "Leon took the shredder out to the farm to shred this corn and at the same time put the shredder into better running order."

That evidence at least indicates that Leon went out there to

assist in the shredding of the corn. There is a sharp conflict in the testimony, but there seems to be substantial evidence to sustain the findings reached by the trier of the facts. Some repairs seem to have been put on the shredder before shredding operations were commenced, and from the testimony it is fair to infer that during the shredding operations, with Leon going back to town at the close of the day's work shredding corn, that additional repairs, if needed, would be brought out.

Appellant places considerable stress upon the fact that Cassels, the owner of the farm, had carried a policy of insurance relating to risks concerning his farm operations, but that it had lapsed on November 16, 1928, some eight days before the injury took place to his son, Leon. Just what weight that might have with the trier of the facts is hard to conceive, yet such a fact might easily influence one's judgment when connected up with all of the other evidence, and be of material benefit in deciding the issues.

Considerable space has been devoted to a general statement of the evidence in order to indicate the disputed portions of the evidence as bearing upon the sufficiency thereof to sustain the findings, conclusions, and denial of award of the trier of facts, the industrial commissioner. In dealing with the insufficiency of the evidence to sustain the industrial commissioner, we are faced with the same situation that we decided in Wieber v. England et al, 59 S. D. 1, 238 N. W. 25, 26. In that case we said:

"Can the insufficiency of the evidence be reviewed where there is reasonable or substantial evidence tending to establish the findings of the commissioner? This legal proposition has been before the court upon a number of occasions, and answered in the following cases: In Vodopich v. Trojan Mining Co., 43 S. D. 540, 547, 180 N. W. 965, 967, this court quoted with approval a Wisconsin case:

" 'Milwaukee Coke & Gas Co. v. Industrial Commission, 160 Wis. 247, 151 N. W. 245, where the court said: "There is evidence in the case which supports the findings of fact made by the commission, hence it cannot be said that the board acted without or in excess of its powers, even though this court, if trying the fact, might reach a different conclusion. If there is any substantial, credible evidence supporting the findings of the commission, the courts cannot interfere.' "

See also the Dependents of Claude L. Shaw, Deceased, v. Freeman C. Harms Piano Co. et al, 44 S. D. 346, 348, 184 N. W. 204, in which this court said:

"The question before the trial court was, and the question before us is, whether there was substantial, credible evidence supporting the findings of the Industrial Commissioner. After a careful study of the record we are forced to answer that question in the affirmative. The judgment and order appealed from must therefore be reversed, and the decision of the Industrial Commissioner affirmed. Day v. Sioux Falls Fruit Co., 43 S. D. 65, 177 N. W. 816; Vodopich v. Trojan Mining Co., 43 S. D. 540, 180 N. W. 965; Paul v. (Industrial) Comm., 288 Ill. 532, 123 N. E. 541; Crosaro v. (Industrial Acc.) Comm., 38 Cal. App. 758, 177 P. 489; Bloomington-Bedford Stone Co. v. Phillips, 65 Ind. App. 189, 116 N. E. 850; Milwaukee C. & G. Co. v. Industrial Comm., 160 Wis, 247, 151 N. W. 245; Jackson v. Iowa Tel. Co. (190 Iowa, 1394), 179 N. W. 849; Porter v. Industrial Comm. (173 Wis. 267) 181 N. W. 317.

Also in Ross v. Independent School District, 49 S. D. 491, 207 N. W. 446, 447, this court said:

"This court has gone a great way in holding that the findings of the Board of Arbitration and of the Industrial Commissioner upon review will not be here reviewed, if there was any substantial, credible evidence to support the same."

We believe that there is substantial evidence to sustain the findings, conclusions, and denial of award of the industrial commissioner. The findings do not positively assert that claimant was not in the employment of the defendant corporation, yet the industrial commissioner found that he was employed by H. W. Cassels as a farm laborer, and that he was engaged in shredding corn upon the farm of H. W. Cassels when he was injured. The conclusion to the effect that he was in the employment of H. W. Cassels, an individual, as a farm laborer at the time the accident occurred, is at least an implied assertion in the findings and conclusions to the effect that he was not in the employment of the implement corporation. We therefore conclude that the decision of the industrial commissioner must be sustained and the findings, conclusions, and judgment of the circuit court reversed. Every proceeding in which facts are at issue contemplates that some judge or jury or

other official created for that purpose should pass upon the credibility of the witnesses and determine the facts of the case. That the board of arbitrators and the industrial commissioner were contemplated to perform such duties cannot be doubted.

The judgment appealed from is reversed, and the cause is remanded to the circuit court, with directions to enter a judgment affirming the order of the industrial commissioner denying an award to plaintiff.

POLLEY, ROBERTS, and RUDOLPH, JJ., concur.

CAMPBELL, P. J., deeming himself disqualified, takes no part in this opinion.