JACOBSON, Respondent v. STRONG & WAGGONER, et al, Appellants

(287 N. W. 41.)

(File No. 8175. Opinion filed July 15, 1939.)

*Caldwell & Burns*, of Sioux Falls, for Appellants.
*Joe W. Flood*, of Canistota, for Respondent.

WARREN, P. J. Proceedings under the Workmen's Compensation Act (Rev. Code 1919, § 9436 et seq.) by Alfreda Jacobson to obtain compensation for the death of her husband, Barney Jacobson, an employee of Strong & Waggoner. From the appellant's statement of controlling facts and the record before us we make the following observations which become pertinent to the application of the law involved. Barney Jacobson, the husband of the respondent, entered into the employment of Strong & Waggoner in December, 1935. He first worked in the Mitchell shops and then on a graveling project in January, 1936. Bad weather set in and he was out of work until in March. He then did some graveling work. On July 12, 1936, a grading project south of Gettysburg was started. On this last project Jacobson was the mechanical foreman in charge of repair and maintenance of equipment. While acting in the capacity of mechanical foreman he came to his death on August 16, 1936, as the result of burns suffered in a fire which destroyed the bunk car in which he was sleeping near the location of the grading project on which he had been employed. The project was a WPA project on which he could be employed 160 hours per month. At the time of his death he was earning $25.00 per week with a deduction of 80c per day for board. At the close of the evidence before the Industrial Commissioner an award was made to the claimant, Alfreda Jacobson, the widow, in the sum of $3,000.00, which sum was to be paid at the rate of $12.50 per week. The petition for review was denied and an appeal taken to the circuit court. The circuit court entered its order that the award of the Industrial Commission be in all things affirmed. An appeal from the circuit court was perfected to this court.

Our statement of the facts above is brief, but with the assistance of the findings and conclusion, as made by the Industrial Commissioner, which we quote, and with such reference as we will hereafter make in the body of the opinion, should be ample for a clear understanding of the fact situation. We quote the portion challenged by appellants' assignments:

"Findings

"8. That it was necessary for the said Jacobson in order to properly fulfill his duties to be on the premises of the defendant, Strong & Waggoner, at all times in order to be available if his services were needed.

"11. That no charge was made by defendant, Strong & Waggoner, to said Jacobson for sleeping in said sleeping cars but that said Jacobson slept therein with the consent of said defendant; that no express contract was made between Jacobson and Strong & Waggoner relative to his sleeping on the premises, but that Jacobson was expected to sleep on said premises and that he slept on said premises in accordance with such expectation.

"12. That said Jacobson slept on the premises of said employers, Strong & Waggoner, in order to be available if his services were necessary for the repair of machinery.

"13. That the employers, Strong & Waggoner, were benefited by Jacobson sleeping on the premises as aforesaid.

"14. That on the night of August 15th and the morning of August 16th, 1936, the said Jacobson was sleeping in one of said sleeping car on the premises of the defendant, Strong & Waggoner, in accordance with the arrangements above referred to and in pursuance to the expectations of his employers, Strong & Waggoner."

"Conclusions

"2. That on and prior to August 16, 1936, Bernard Jacobson, also known as Barney Jacobson, was employed by the defendant, Strong & Waggoner, as master mechanic at an average weekly wage of $25.00 per week."

"5. That the said Bernard Jacobson, also known as Barney Jacobson, received the injuries from which he died in an accident arising out of and in the course of his employment, and that the sleeping of the said Bernard Jacobson, also known as Barney Jacobson, in the sleeping car of the defendant, Strong & Waggoner, was incidental to his employment."

"7. That the death of the said Bernard Jacobson, also known as Barney Jacobson, from the injuries and burns received as aforesaid, is a compensable injury within the meaning of Article 4, Chapter 5, Part 19, Title 6 of the 1919 Revised Code and acts amendatory thereto, known as the Workmen's Compensation Act."

Appellants, by all of their assignments of error excepting Nos. 6 and 7, present the question whether or not the accident causing the death of the deceased arose out of and in the course of his employment. From an examination of the evidence we feel that such evidence fully warranted the Industrial Commissioner in making his findings and conclusions of law awarding the recovery. That he was amply sustained by the evidence if he believed the testimony of Elmer J. Waggoner, one of the partners of the company who employed Jacobson, is quite clear. His testimony is in part as follows: "Jacobson stayed at the camp while he was working and unless his work took him elsewhere. Sometimes he would have to come into town to get some part of machinery repaired but usually he was right on the job all the time. He slept there in one of the bunk cars. He did not keep regular hours. Sometimes he would be up practically all night, and then again he would not do any work in the night, but there were no regular hours that he worked. Whenever there was work to be done, why he would do it. If a piece of machinery was broken down during the night or broken down at any time, he was supposed to fix it and put it in repair. He tried his best to get it ready for the next day. He had no definite hours to work. He worked when the machinery was broken down, regardless of whether day or night, Saturday or Sunday. It was understood that he was to take charge of the repair work, and of course repair work whenever it has to be done, it has to be done regardless of what time of the twenty-four hours it is. It was the understanding that he was to be available for it."

Appellants contend that there was no duty, requirement or contract provision compelling Jacobson to sleep in the bunk car in which he was burned. As we understand it, the claimant does not insist that there was such a contract of employment especially requiring Jacobson to sleep in the bunk car, but that as an employee he must of necessity get a certain amount of sleep in order to properly perform his tasks; that he was required by the exigencies

of his trade or work to be at all times on or about the premises of his employers; that in order to be ready to do his work when required he had to sleep on the premises of his employers. The record fully sustains the claimant's position. A reasonable construction of the evidence before us indicates strongly that Jacobson was required to be at all times present on the premises of his employer day and night, week days and Sundays. In other words, he was to be available if his services were required. Our court has, in the past, pursued what we believe to be a wholesome rule, in deciding when one is in the course of employment by differentiating between the term "actual employment" and "incidental employment," as pointed out in Meyer et al. v. Roettele et al., 64 S. D. 36, 264 N. W. 191, 194, as follows: "The mere fact that an employee is not actually engaged at his work at the time of injury does not as a matter of law relieve the employer. Under the terms of employment board was furnished. Decedent was where his employer directed him to be, and, although the partaking of food was personal in character, nevertheless it was so incidental to his employment that the accident did arise out of and in the course of employment. Vennen v. New Dells Lbr. Co., 161 Wis. 370, 154 N. W. 640, L. R. A. 1916A, 273, Ann. Cas. 1918B, 293; Archibald v. Workmen's Compensation Commissioner, 77 W. Va. 448, 87 S. E. 791, L. R. A. 1916D, 1013; Gilliland v. Edgar Zinc Co., 112 Kan. 39, 209 P. 658, 29 A. L. R. 431; Krause v. Swartwood, supra [174 Minn. 147, 218 N. W. 555, 57 A. L. R. 611]; Wasmuth-Endicott Co. v. Karst, 77 Ind. App. 279, 133 N. E. 609."

The Industrial Commissioner's finding that the deceased "slept on the premises of said employers, Strong & Waggoner, in order to be available if his services were necessary for the repair of the machinery" is consistent with the evidence because it appears from the facts, that while Jacobson had no repair work to do during the night of the accident, yet he did have some repair work to do on the following day, which was Sunday. The record of the evidence of one of the employers amply sustains this view and we quote excerpts from his testimony:

"Jacobson had some work to do the following day, Sunday. It was some more repair work on machinery. It was customary for him to be on the job, to sleep there. He never figured on doing anything else but sleeping there. It was necessary for him to be

there so we could get hold of him when anything occurred. Of course there was nothing in his contract that stated that he had to sleep there. We wanted him available when we wanted to get hold of him.

"It was optional wherever he wanted to sleep. Of course we wanted him there but of course we couldn't necessarily hold him. He could have slept at one of the farm houses there. It was customary, you know, for the help to stay there. It was really optional with him. He could have slept at some of the neighbors. It was also optional with Groves. Naturally Groves would not go to some place else to sleep and pay for lodging when they could get it free there. It was granted to them free if they desired to accept it.

"His staying there was quite a convenience to us people. We owned the bunk cars. I think it was understood that he would have a bed in the bunk car. * * *"

Under his contract of employment it would appear that he was required to do repair work at any time during the week, including Sundays. It would therefore appear also that it was of little consequence that the accident occurred on a Saturday night when he was free to go and come at will. This view finds support in the holding of able authority. Giliotti v. Hoffman Catering Co. et al., 246 N. Y. 279, 158 N. E. 621, 56 A. L. R. 500. Judge Pound in his opinion briefly referred to the Holt Lumber Co. v. Industrial Commissioner, 168 Wis. 381, 170 N. W. 366, 367, in which the Supreme Court of Wisconsin had held that the accident arose out of and during the course of the employment, and we quote: "The general rule under the authorities is that when the contract of employment contemplates that the employe shall sleep upon the premises of the employer, the employe under such circumstances is considered to be performing services growing out of and incidental to such employment during the time he is on the premises of the employer. Rucker v. Read, 39 N. J. Law J. 48; Chitty v. Nelson, 2 B. W. C. C. 496; Alderidge v. Merry, 6 B. W. C. C. 450; Griffith v. Cole Bros. et al, 183 Iowa 415, 165 N. W. 577, L. R. A. 1918F, 923; Meyers v. Michigan Cent. R. Co., 199 Mich. 134, 165 N. W. 703; Cokolon v. Ship Kentra, 5 B. W. C. C. 658; International & G. N. R. Co. v. Ryan, 82 Tex. 565, 18 S. W. 219."

In the foregoing the Industrial Commissioner found that the employer had placed the workman in such circumstances that his time was never his own and that he did not have any discretion as to where he might sleep. The same is true of the facts in the instant case. The employee, Jacobson, had to be there night and day to perform the services for which he had been employed.

In the case of Larson et al. v. Industrial Accident Commission et al., 193 Cal. 406, 224 P. 744, 745, the court said: "The facts of the case we are now considering present a situation in which 'the employer places the employee in such circumstances that his time is never his own, where he has no discretion as to where he shall sleep and where he shall eat, under such circumstances the workman must be considered in the employ of the employer all of the time, or at least performing a service which is incidental to the employment he is engaged in.' Holt Lumber Co. v. Industrial Comm., 168 Wis. 381, 170 N. W. 366; Honnold on Workmen's Compensation, § 109, p. 373." Bellman v. Northern Minn. Ore Co., 167 Minn. 269, 208 N. W. 802; Nester v. H. Korn Baking Co., 194 Iowa 1270, 190 N. W. 949; Griffith v. Cole Bros. et al., 183 Iowa 415, 165 N. W. 577, L. R. A. 1918F, 923. See, also, Younger v. Motor Cab Transportation Co. et al., 260 N. Y. 396, 183 N. E. 863, as to acts of employees whether personal and wholly unrelated to employment and where the same occurs "in course of and arises out of employment."

■■ From a careful consideration of all the evidence we believe that the evidence submitted by the respondent is sufficient to sustain the findings of the Industrial Commissioner wherein he found that the injury from which Jacobson died was an accident which arose out of and in the course of his employment. This court adheres to the rule of law announced in previous decisions that the findings of the Industrial Commissioner will not be disturbed on appeal if there is any reasonable, credible and substantial evidence tending to establish the Commissioner's findings. Weiber v. England, 52 S. D. 72, 216 N. W. 850, Id., 59 S. D. 1, 238 N. W. 25; Day et al. v. Sioux Falls Fruit Co. et al., 43 S. D. 65, 177 N. W. 816; Vodopich v. Trojan Mining Co., 43 S. D. 540, 180 N. W. 965; Dependents of Shaw v. Freeman C. Harms Piano Co., 44 S. D. 346, 184 N. W. 204; Wakefield v. Warren-Lamb Lbr. Co., 46 S. D. 510, 194 N. W. 835; Ross v. Independent Sch. Dist., 49 S.

D. 491, 207 N. W. 446; Cassels v. H. W. Cassels & Co. et al., 59 S. D. 643, 242 N. W. 587; Detling v. Tessier et al., 60 S. D. 405, 244 N. W. 538, Id., 61 S. D. 403, 249 N. W. 686; Barwin v. Independent School Dist. of Sioux Falls et al., 61 S. D. 275, 248 N. W. 257.

 Appellants by assignments of error Nos. 6 and 7 contend that there is no evidence or finding to afford a basis for computation of compensation for death; that the applicable provision if any compensation is to be allowed will fall under subdivision 5 of Sec. 9461 of the S. D. Rev. Code of 1919, for the reason that the employment was not continuous the year round and that there should have been a determination by the Commissioner as to whether or not the deceased was employed more or less than two hundred days during the year. Respondent attempts to meet this contention by saying that the average weekly wage received by Jacobson was $25 per week and as such would amount to the annual wage of $832 per year . The records show that Jacobson commenced work in December, 1935, in the shops at Mitchell and in January, 1936, worked on a graveling project and then because of poor weather conditions he was unable to work until in March when he did some graveling work and that he started the grading project in July, 1936. It would therefore seem that what this court said in Meyer et al. v. Roettele, 64 S. D. 36, 264 N. W. 191, relative to the basis of computation for one who worked at threshing operations and which work was seasonal and not continuous throughout the year and therefore must fall under subdivision 5 of Sec. 9461, S. D. 1919 Rev. Code, is applicable to the facts in the instant case. In Humphreys v. Frank Shuknecht, Jr., Const. Co. et al, 66 S. D. 112, 279 N. W. 246, 249, this court considered the question of the Industrial Commissioner's computation of claimant's total annual earnings for the basis of the award. It would seem that the claimant was engaged in hauling gravel by motor truck for road construction and that it was customary to operate only part of the whole number of working days in each year. In this last decision we discussed Meyer v. Roettele, supra, and also Smith v. Utah-Idaho Sugar Co., 63 S. D. 45, 256 N. W. 261, and said that this court cannot by construction limit this plain language to seasonal employment only. The court discussed seasonal occupations of threshing and work in sugar beet factories where it is

customary to operate for only a portion of the whole number of working days in each year and then said:

"Subdivision 5 furnishes a complete scheme for determining the annual earnings in each case where the employment is such that it is the custom to operate for only a part of the working days of each year, and this is true whether or not the injured person has been employed by the same employer a full year prior to the time of the accident. If the injured person had been employed by the same employer for a full year preceding the injury, and if the annual earnings are not otherwise determinable, then the days actually worked during the year should be used as a basis, subject to the minimum of two hundred; however, if the injured employee had not been employed by the same employer a full year preceding the injury (and such is the case before us), or if, having worked a full year, the annual earnings or the actual number of days worked are not determinable, then the industrial commissioner should determine from evidence the number of days it is customary to work in the particular type of employment, and use this number as a basis, again subject to the minimum of two hundred.

"In our opinion the basis for computing this award must be subdivision 5 of said section. As we read subdivision 5, it is to be applied so far as the facts here are concerned by determining the number of days throughout the year it is customary to work in the employment in which respondent was engaged, which in no event shall be less than two hundred, and then multiplying this number by the average daily earnings."

The judgment appealed from must be reversed in order that there may be a determination whether the deceased was employed more or less than 200 days during the year and to determine his average daily earnings as provided for by subdivision 5 of Sec. 9461. The record seems sufficient in detail so that proper findings of fact may be made to support an award under the law as pointed out in this opinion. No costs will be taxed in this court.

POLLEY, J., concurs.

RUDOLPH and ROBERTS, JJ., concur in result.

SMITH, J., dissents.

SMITH, J., (dissenting). I am of the opinion that the accident which caused the death of the employee did not arise in the course of his employment. Therefore I dissent.