**Velda BEARSHIELD, Special Administratrix of the Estate of William Bearshield, Deceased, Claimant and Respondent,**

v.

**CITY OF GREGORY, Employer and Appellant,**

and

**St. Paul Insurance Companies, Insurer and Appellant.**

No. 12441.

Supreme Court of South Dakota.

Argued Jan. 23, 1979.

Decided April 19, 1979.

J. M. Grossenburg of Day & Grossenburg, Winner, for claimant and respondent.

Gary E. Davis of Johnson, Johnson & Eklund, Gregory, for employer and appellant, and insurer and appellant.

MORGAN, Justice.

This is an appeal from a judgment of the Circuit Court for the Sixth Judicial Circuit reversing the decision of the Director of the Department of Labor denying death benefits under the worker's compensation statutes on the grounds that decedent's death was not "in the course of" his employment. We affirm the judgment of the circuit court and remand the matter to the Department of Labor (Department) for further proceedings.

William Bearshield (decedent) was a police officer for the City of Gregory for four years. On numerous occasions during those four years, his police duties brought him into contact with Norman Blue Bird, with Blue Bird's two younger brothers and, shortly before his death, he had been on duty in the jail while Blue Bird's mother was serving a portion of a sentence for driving without a license. Blue Bird resented decedent and had threatened and attacked him. Decedent was quite concerned that Blue Bird may attempt to kill him and instructed his wife and daughter on what to do if he should be killed by Blue Bird. Shortly before his death, he had received a mysterious phone call and his car's windshield had been broken. Decedent did not have any contact or dealings with Blue Bird other than those as a police officer in the course of his duties.

On July 23, 1976, decedent commenced a one-week vacation from his employment as a policeman. He and his family spent a portion of that vacation at a pow-wow in Milk's Camp, about thirty miles from Gregory, where they operated a concession stand and he served as an announcer for a softball tournament. The pow-wow ended shortly before midnight on July 25, 1976. Decedent's family returned to Gregory, but he remained at Milk's Camp with his two brothers with the intention of removing the concession stand in the morning. Decedent, his two brothers, and a friend spent the night sleeping in decedent's car parked in a friend's driveway. In the early morning hours, Blue Bird and his mother approached the car and asked if Officer Bearshield was asleep. Decedent's brother said that he was and then Blue Bird's mother opened the car door beside decedent and Blue Bird stabbed him in the heart saying "leave my mom alone." He died of the stab wounds.

In December of 1976, decedent's widow, respondent, filed a notice of death and peti-

tion for hearing seeking to claim worker's compensation death benefits for her husband's death. A hearing was held in March 1977, and on June 8, 1977, the Department denied respondent's claim. The Department's denial was based upon its conclusion of law that decedent's death was not "in the course of" his employment. Respondent appealed to circuit court which reversed the Department's ruling and, in a well-reasoned and detailed decision, held that decedent's death was "in the course of" his employment and that respondent was entitled to receive worker's compensation death benefits. The City of Gregory and its insurance carrier, appellants, appeal from the circuit court's judgment.

South Dakota's worker's compensation statutes provide that compensation shall be awarded to the widow and children of an employee whose injury results in death, provided that the injury "aris[es] out of and in the course of the employment." [1] It is not disputed by appellants that the injury arose "out of" the decedent's employment. There is no doubt that there is a causal connection between the injury and the employment and that the injury had its origin in the hazard to which the employment exposed decedent while doing his work. *Krier v. Dick's Linoleum Shop,* 78 S.D. 116, 98 N.W.2d 486 (1959). The sole issue is whether the injury arose "in the course of" decedent's employment.

In concluding that decedent's death did not arise "in the course of" his employment, the Department's hearing examiner relied upon previous South Dakota cases wherein the phrase "in the course of employment" has been interpreted. This Court has made it clear that the words "in the course of employment" refer to the time, place and circumstances of the injury. This does not limit the application of the statute to the period during which an employee is actually engaged in the work he is hired to perform. An employee is considered to be in the course of his employment if he is doing something that is either naturally or incidentally related to his employment or which he is either expressly or impliedly authorized to do by the contract or nature of the employment. *Krier v. Dick's Linoleum Shop,* supra; *Wilson v. Dakota Light & Power Co.,* 45 S.D. 175, 186 N.W. 828 (1922); *Lang v. Board of Education, Etc.,* 70 S.D. 343, 17 N.W.2d 695 (1945). Under the above interpretation of "in the course of employment", this Court has allowed recovery in certain cases where a very strict interpretation of the phrase would have prohibited recovery. In *Meyer v. Roettele,* 64 S.D. 36, 264 N.W. 191 (1935), an employee of Roettele died of botulism which he received from eating a noon meal at the home of a farmer for whom Roettele was threshing grain. The serving of a noon meal to Roettele's employees was a part of the arrangement made between Roettele and the farmer. This Court held that the injury did indeed arise "in the course of employment" even though it took place during the noon hour. A similar situation arose in *Krier v. Dick's Linoleum Shop,* supra, where, after a long day's work, the employee, who had been instructed by his employer to go out to eat and had been given money for that purpose, was injured in a car accident while returning to his hotel for the night. In that case, this Court stated that the "in the course of employment" requirement is quite broad and that since the employee's actions were incidental to his employment, his injuries were compensable. The employee's actions had not deviated from his course of employment considering the fact that he was not acting unreasonably nor contrary to his employer's instructions.

Again, in *Lang v. Board of Education,* supra, the compensability of an injury suffered by the claimant during a time when he was not, strictly speaking, performing the duties of his employment was before this Court. The claimant, a school superintendent, had slipped on the ice and injured himself while walking to the school building from his home. The weather was inclement and earlier that morning he had made several phone calls in an effort to ascertain

1. SDCL 62–4–12, SDCL 62–4–13, and SDCL 62–1–1(2).

whether school should be called off for the day. We held that the claimant's duties were of such a nature that he was in the process of performing them and that the injury was compensable.

A different situation was presented in *Jacobson v. Strong & Waggoner*, 66 S.D. 552, 287 N.W. 41 (1939). In that case, an employee died when the boxcar in which he was sleeping, located at the worksite, burned. He was the mechanical foreman and his duties did not fall within any precise hours, but rather he was required to do repair and maintenance work as needed. His employer was fully cognizant that he slept in the boxcar, did not object, and benefited from his being at the worksite at all times. Recovery was allowed because even though he was not working at the time, his presence in the boxcar was certainly incidental to his employment, was due to his employment, and was beneficial to his employer.

Upon analyzing these cases, the Department's hearing examiner, concluded that, at the time of his injury and death, decedent's actions were not naturally or incidentally related to his employment. The hearing examiner stated that despite the patent inequity involved he could not interpret South Dakota case law so as to conclude that decedent was "in the course of" his employment while on vacation and performing no task relative to his employment.

We agree with the hearing examiner that the application of the rule as it is presented in this Court's previous decisions would seem to preclude recovery by respondent. The cases cited and discussed above, however, are distinguishable from the instant case because in the above cases, the "occurrence" of the injury coincides with the "arising" of the injury, as is the case in nearly all worker's compensation injuries. This prevalent coincidence tends to lull us into equating the two words. The instant case, however, brings them into sharp contrast. The actual injury "occurred" on July 26, 1976, but it cannot be said that it "arose" at that time. The actual occurrence was merely the culmination of something that had been "arising" for quite some time in the course of decedent's employment and was triggered by his performance of his duty in keeping Blue Bird's mother in jail. Thus, it seems that the injury indeed "arose in the course of" decedent's employment.

There is precedent for allowing recovery under this type of circumstance. In *Meo v. Commercial Can Corp.*, 80 N.J.Super. 58, 192 A.2d 854 (1963), a plant superintendent was assaulted by disgruntled union members because of his efforts to keep his plant operational in spite of a labor strike. He received numerous threats from various workers and was finally assaulted and beaten early one morning in his driveway. The Superior Court of New Jersey allowed recovery pointing out that the claimant was attacked solely because of his work and that:

> [T]he conditions surrounding the labor dispute and the totality of circumstances attending Meo's employment made the assault upon him a natural incident of his work as plant superintendent and, . . . a risk occasioned by the nature of his employment in behalf of management. The assault was directly related to his work and is therefore compensable. 192 A.2d at 859.

Also, in a later case, *Thornton v. Chamberlain Manufacturing Corp.*, 62 N.J. 235, 300 A.2d 146 (1973), the New Jersey Supreme Court awarded compensation to a claimant who was injured by a fellow employee formerly under his supervision. While serving as production foreman, the claimant had reprimanded a certain employee several times for his repeated failure to wear safety glasses. The employee resented the reprimand and had threatened to "take care of [claimant's] eyes later." Nine days after the claimant had ceased to be employed by the company, the employee attacked him. The attack resulted in the loss of sight in the claimant's right eye. The court stated that there could be no doubt that the injury "arose in the course of" the claimant's employment and cited *Meo*, supra, and *Field v. Charmette Knitted Fabric Co.*, 245 N.Y.

139, 156 N.E. 642 (1927), in which the claimant was allowed recovery where a dispute at work resulted in an assault immediately outside the building. The *Thornton* Court seized upon Justice Cardozo's statement in *Field* that "[c]ontinuity of cause has been so combined with contiguity in time and space that the quarrel from origin to ending must be taken to be one" and explained:

> The sense of the concept is that an injury 'arises' in the course of employment whenever the work in fact envelops the victim with a danger which goes with him when he leaves the course of his employment. When that is so, the accident has its origin in the course of employment, and that fact may remain decisive notwithstanding that the injurious end accrued after the victim left the physical ambit of his employment. 300 A.2d at 149.

Another case which we find particularly persuasive involved the death of a prosecuting attorney from Montgomery County, Virginia. *Graybeal v. Bd. of Sup'rs of Montgomery Cty.*, 216 Va. 77, 216 S.E.2d 52 (1975). In 1968, John Patrick Graybeal had prosecuted Frank Dewease for murder and Dewease had, on various occasions after his conviction, vowed revenge on Graybeal. After Dewease's release from prison in 1973, he placed a bomb in Graybeal's garage which resulted in Graybeal's death. The Virginia Supreme Court analyzed its historical interpretation of "arising out of and in the course of employment", which was very similar to that of this Court, and decided that it would be:

> [B]oth unrealistic and in derogation of the beneficent purposes of the Workmen's Compensation Act to . . . apply a rule which is designed for an employment situation with fixed hours of employment, identifiable places of performance, and definable areas of risk, but with no greater nexus between work and injury than exists in the present situation. The present case requires application of a modified rule, one sufficiently flexible to recognize the realities of the claimant's employment situation and yet rigid enough to prevent its extension to

unwarranted situations. 216 S.E.2d at 54.

The court adopted a modified rule which emphasized the difference between "occurring", a word not contained in the statute, and the statutory word "arising", which it equated with "originating." It stated that where there is a "showing of an unbroken course beginning with work and ending with injury under such circumstances that the beginning and the end are connected parts of a single work-related incident", the requirement of "in the course of employment" has been satisfied.

We agree with these latter authorities and find their reasoning to be in line with the broad spirit of the worker's compensation statutes and the liberal construction they are to be afforded. *Meyer v. Roettele*, supra. The case before us is not a typical industrial injury case involving the usual employer-employee and cause-result nexus. This is a situation where decedent's employment, by its very nature, exposed him to injury of an unusual sort, i. e., a fatal assault by a revenge-seeking youth. This type of injury knows no particular location or working hours.

We need not decide the propriety of recovery in a situation similar to the one in *Ottawa County v. King*, Okla., 394 P.2d 536 (1964), wherein the decedent was shot simply because he was a law enforcement officer and the assailant disliked "cops." That is not the case here. In this case there are specific incidents which precipitated the attack. It was like a time bomb which was fueled by various arrests and contacts, ignited by the jailing of Blue Bird's mother, and happened to explode while decedent was on vacation. Particular times, places and circumstances "in the course of employment" precipitated the injury and recovery should be allowed.

The decision of the circuit court is affirmed and the matter is remanded to the Department for further proceedings.

All the Justices concur.