**Pat PHILLIPS, Claimant and Appellee,**

v.

**JOHN MORRELL & COMPANY,**
**Employer and Appellant.**

**No. 17554–a.**

Supreme Court of South Dakota.

Considered on Briefs Dec. 3, 1991.

Decided April 29, 1992.

Chris A. Nipe of Bridgman, Larsen & Nipe, Mitchell, for claimant and appellee.

Michael S. McKnight of Boyce, Murphy, McDowell & Greenfield (John Gors, Legal Intern, of counsel), Sioux Falls, for employer and appellant.

YOUNG, Circuit Judge.

John Morrell & Co., (Morrell) appeals from a circuit court judgment upholding Pat Phillips' (Phillips) claim for worker's compensation benefits which include temporary total disability benefits from date of injury through August 29, 1988, and the payment of medical expenses. The circuit court affirmed the deputy director of the Division of Labor and Management (Department) which originally granted the claim following a hearing. We affirm.

Morrell initially hired Phillips on June 22, 1987. By July 28, 1988, Phillips was employed in the hog kill department where he removed sperm cords from male hogs as they passed by suspended on a chain. The sperm cords were a lightweight substance, similar to straw, with a length of three to six inches. They were removed by use of a knife with a thin, nine-inch long blade, and discarded on a conveyor belt which carried away waste products.

To complete the job, Phillips stood on a three-foot high platform. Chad Berg (Berg) and Curtis Mortinsen (Mortinsen) were on the same line and in close proximity to Phillips. Mortinsen stood below Phillips and to his left. Berg stood to the left of Mortinsen. They trimmed waste from the neck of hogs. This trimming also entailed the use of a long, thin knife. The knives, provided by Morrell, were maintained razor sharp by the employees to lessen the difficulty of the job. Approxi-

mately one hog passed through the line every 3.5 seconds.

The operations in the kill area were overseen by approximately seven to eight supervisors and a similar number of government inspectors. Phillips was aware of Morrell's work rules, which prohibited horseplay. These rules, however, did not define what constituted horseplay. Although prohibited, horseplay did occur and Morrell dealt with it or tolerated it to varying degrees. Prior to July 28, 1988, Phillips had never been disciplined for engaging in horseplay.

On July 28, 1988, Phillips suffered a through-and-through laceration of his lower left leg as a result of being stabbed by Mortinsen's knife. The line had been in operation approximately six hours and had not been shut down during the shift prior to the incident. Phillips had not been reprimanded for failure to complete his work prior to the incident. At the time of the stabbing, Phillips and Mortinsen were at their stations and performing their duties. Phillips was wearing all required safety gear. The testimony concerning the incident was in dispute. The department found and the circuit court concurred that:

> [Phillips] and Mortinsen were throwing sperm cords and stick wounds at each other shortly before the stabbing took place. Mortinsen requested [Phillips] to stop throwing sperm cords and when [Phillips] did not stop, Mortinsen waived his knife at [Phillips]. Whether intentionally or by accident, Mortinsen stabbed [Phillips] with his knife, causing the through-and-through laceration to [Phillips'] leg. [Phillips] was engaged in horseplay at the time of the stabbing incident.

The supervisors and inspectors did not shut down the line or reprimand Phillips that day for horseplay.

■ When reviewing a factual question, this court must decide whether the agency was clearly erroneous in reaching its findings. *Egemo v. Flores*, 470 N.W.2d 817 (S.D.1991); SDCL 1–26–36(5). " '[T]he question is not whether there is substantial evidence contrary to the agency finding, but whether there is substantial evidence to support the agency finding.... [T]he court shall give great weight to findings made and inferences drawn by an agency on questions of fact.' " *Id.* at 819 (*quoting Schlenker v. Boyd's Drug Mart*, 458 N.W.2d 368, 371 (S.D.1990)). Clearly there is a factual dispute about the immediate events leading to the stabbing. The dispute arises primarily from a conflict in testimony. Department heard the conflicting testimony and weighed the credibility of the witnesses. Department appeared to have relied predominantly on the testimony of Berg, who was a nonparticipating witness in close proximity to the incident. His testimony supports the agency findings. Therefore, we conclude that Department was not clearly erroneous in finding that horseplay did occur between Mortinsen and Phillips at the time of the stabbing.

■ The circuit court and Department concluded that the horseplay did not relieve Morrell of worker's compensation liability. However, issues involving questions of law or mixed questions of fact and law are fully reviewable. *Id.* This court reviews the following issue de novo.

### ISSUE

DID PHILLIPS' INVOLVEMENT IN HORSEPLAY AT THE TIME OF INJURY RELIEVE MORRELL OF WORKER'S COMPENSATION LIABILITY?

### ANALYSIS

The issue before this court is one of first impression. Morrell has raised two arguments in its claim that the horseplay engaged in relieves it of worker's compensation liability. First, Morrell contends that Phillips' horseplay was a substantial deviation from his employment which resulted in injury. In the alternative, Morrell claims that Phillips' horseplay amounts to willful misconduct pursuant to SDCL 62–4–37 and as such disqualifies recovery.

## SUBSTANTIAL DEVIATION
## FROM EMPLOYMENT

To establish a worker's compensation claim, the "claimant has the burden of proving all facts essential to compensation...." *King v. Johnson Bros. Construction Co.*, 83 S.D. 69, 155 N.W.2d 183, 185 (1967). Only an employee whose injury arises "out of and in the course of the employment" is covered by worker's compensation. SDCL 62-1-1(2); *see also* SDCL 62-3-3; *Deuschle v. Bak Const. Co.*, 443 N.W.2d 5, 6 (S.D.1989).

It is clear that the injury arose "out of" Phillips' employment. Phillips would not have become injured but for the fact he was at work. Therefore, there is "a causal connection between the injury and the employment and ... the injury had its origin in the hazard to which the employment exposed [Phillips] while doing his work." *Bearshield v. City of Gregory*, 278 N.W.2d 166, 168 (S.D.1979) (*citing Krier v. Dick's Linoleum Shop*, 78 S.D. 116, 98 N.W.2d 486 (1959)). The injury need not be proximately caused by the employment, but simply that it would not have occurred but for the employment. *Krier*, 98 N.W.2d at 487. Since the injury arose "out of" the course of employment, the next issue becomes whether Phillips' injury arose "in the" course of his employment.

In *Bearshield*, 278 N.W.2d at 168, we stated that this phrase refers "to the time, place and circumstances of the injury." Furthermore, "[a]n employee is considered to be in the course of his employment if he is doing something that is either naturally or incidentally related to his employment...." *Id.* We have recognized that "this court has allowed recovery in certain cases where a very strict interpretation of the phrase would have prohibited recovery." *Id.; see Meyer v. Roettele*, 64 S.D. 36, 264 N.W. 191 (1935); *Krier, supra; Lang v. Board of Educ. Etc.*, 70 S.D. 343, 17 N.W.2d 695 (1945); *Jacobson v. Strong and Waggoner*, 66 S.D. 552, 287 N.W. 41 (1939). Since we have not embraced a strict interpretation of the phrase "in the course of employment" in matters which do not pertain to horseplay, we now adopt factors to be considered in matters which do pertain to horseplay. Specifically, we adopt the factors enumerated in Larson's Workmen's Compensation Law as to whether horseplay is within the course of employment. Larson states:

> The current tendency is to treat the question, when an instigator is involved, as a primarily course of employment [question] ...; thus minor acts of horseplay do not automatically constitute departures from employment, but may here, as in other fields, be found insubstantial. So, whether initiation of horseplay is a deviation from course of employment depends on: (1) the extent and seriousness of the deviation, (2) the completeness of the deviation (i.e., whether it was commingled with the performance of duty or involved an abandonment of duty), (3) the extent to which the practice of horseplay had become an accepted part of the employment, and (4) the extent to which the nature of the employment may be expected to include some such horseplay.

1A Larson's Workmen's Compensation Law § 23.00 (1990).

Since horseplay does not constitute a part of Phillips' duties for Morrell, the question of whether Phillips was operating in the course of his employment becomes a question as to the seriousness of the deviation from his duties. First, when considering the extent and seriousness of the deviation, we must look at the act and not the consequences. Phillips was at his work station where he performed his required duty of cutting sperm cords. Instead of disposing them on a conveyor belt, Phillips threw them at a co-worker. The horseplay involved the throwing of sperm cords which have been described as a straw-like material. Despite the fact that approximately fourteen supervisors and government inspectors were around the kill floor, the line was not shut down, nor was Phillips reprimanded for failure to perform his duties. The extent of the horseplay was not significant enough to affect the work product. Despite the close proximity of the workers, there is no reason to foresee that the throwing of sperm cords or

stick wounds would result in a serious injury such as a stabbing wound. The deviation was not serious or substantial.

Second, Phillips continued performing his duties as the horseplay took place. Phillips at no time abandoned his duties; rather, his duty to cut the cords was commingled with his act of throwing them at a co-worker.

Third, undisputed testimony was given that despite Morrell's rule against horseplay, horseplay such as that engaged in by Phillips did occur. Morrell dealt with or tolerated this horseplay to varying degrees.

Finally, it could be expected that some horseplay would be engaged in during the course of assembly line jobs. These monotonous jobs provide such a constant pattern of repetition that some new stimulus becomes necessary to relieve the tedium. For the worker, some moderate amounts of horseplay operate as that stimulus. As stated by the court in *Hartford Accident & Indemnity Co. v. Cardillo*, 112 F.2d 11, 15 (C.A.D.C.1940):

> [The employment] environment includes associations as well as conditions, and that associations include the faults and derelictions of human beings as well as their virtues and obediences. Men do not discard their personal qualities when they go to work. Into the job they carry their intelligence, skill, habits of care and rectitude. Just as inevitably they take along also their tendencies to carelessness and camaraderie, as well as emotional make-up. In bringing men together, work brings these qualities together, causes frictions between them, creates occasions for lapses into carelessness, and for fun-making and emotional flare-up. Work could not go on if men became automatons repressed in every natural expression.... These expressions of human nature are incidents inseparable from working together. They involve risks of injury and these risks are inherent in the working environment.

Having reviewed all four of Larson's factors, as well the causal connection between the injury and employment, we conclude that the horseplay Phillips engaged in was not a substantial deviation from his employment and therefore Phillips' injury is "out of" and in the course of his employment which is required for an employee to receive compensation under our worker's compensation laws.

In addition to the issue regarding deviation from employment, Morrell also has claimed that Phillips' horseplay amounted to willful misconduct under SDCL 62–4–37 and as such disqualifies recovery.

## WILLFUL MISCONDUCT

At the time of the incident SDCL 62–4–37 provided:

> No compensation shall be allowed for any injury or death due to the employee's willful misconduct, including intentional self-inflicted injury, intoxication, or willful failure or refusal to use a safety appliance furnished by the employer, or to perform a duty required by statute. The burden of proof under this section shall be on the defendant employer.

Morrell contends that Phillips' horseplay was a knowing violation of Morrell's work rules and should be considered willful misconduct. Morrell asserts that the definition for misconduct which includes "failure to obey orders" found in SDCL 61–6–14.1 should be applied to SDCL 62–4–37. However, by its own terms, that definition is limited to SDCL ch. 61–6 which deals with unemployment benefits. Nowhere in SDCL 62–4–37 is willful misconduct specifically defined as a violation of work rules.

Worker's compensation laws are to be understood as "remedial in character and entitled to a liberal construction." *Oviatt v. Oviatt Dairy, Inc.*, 80 S.D. 83, 85, 119 N.W.2d 649, 650 (1963). SDCL 62–4–37 gives four examples of intentional acts which constitute willful misconduct. The violation of any of these acts would conceivably increase the probability of injury, especially around sharp knives and dangerous machinery. Phillips did not engage in self-inflicted injury, intoxication, the failure to use safety equipment, or the failure to perform a duty required by statute, but rather in the throwing of sperm cords dur-

ing moderate horseplay. Department concluded that "[t]hese circumstances do not compare to the deliberate actions required under the statute.... It is only in those instances that constitute serious, deliberate, and intentional misconduct, that the bar to benefits provided by SDCL 62–4–37 should be applied." We agree. Based on the foregoing, the decision of the circuit court is affirmed.

SABERS and AMUNDSON, JJ., concur.

MILLER, C.J., concurs specially.

HENDERSON, J., dissents.

YOUNG, Circuit Judge, for WUEST, J., disqualified.

MILLER, Chief Justice (concurring specially).

I agree with the majority opinion, wherein it allows Phillips to recover worker's compensation benefits for his injuries. However, I write specially to further emphasize that benefits should be awarded under these conditions only in very limited circumstances.

Morrell denied Phillips' claim for worker's compensation asserting that he was engaged in horseplay when he was injured. It is obvious that Phillips' conduct deviated from the course of his employment. While the act (throwing sperm cords) was not a serious deviation from Phillips' duties, his actions did result in a serious injury. It is important to reiterate that Phillips did not injure himself during the horseplay; rather, his co-worker, who was also participating in horseplay, either intentionally or accidentally stabbed Phillips.

> The substantial character of a horseplay deviation should not be judged by the seriousness of its consequences in the light of hindsight, but by the extent of the work-departure in itself. This is not always easy to do, especially when a trifling incident escalates or explodes into a major tragedy.

1A A. Larson, *The Law of Workmen's Compensation,* § 23.63 at 5–212 (1990). It appears that this is a case where a slight deviation from the path of employment escalated into a most serious mishap.

I believe it is important to stress that we are not condoning either the employees' conduct or Morrell's apparent tolerance (through its supervisor) of the horseplay in this case. Removing the sperm cords from the hogs required the workers to make precise movements with extremely sharp knives—this at a time when a hog was going by them on a conveyor every 3.5 seconds. Under these work conditions, there is always the potential for danger.

Additionally, this case is easily distinguished from the cases which have denied the employee benefits because of a serious deviation from work duties. *See, e.g., Kotlarich v. Inc. Village of Greenwood Lake,* 101 A.D.2d 673, 476 N.Y.S.2d 23 (1984) (police officer injured when co-worker's gun accidentally discharged during horseplay); *Nigbor v. Department of Industry,* 120 Wis.2d 375, 355 N.W.2d 532 (1984) (employee killed when he jokingly placed his head between the plates of a compression mold and accidentally hit the activating lever).

It must be noted that under our holding, worker's compensation benefits should be allowed when an employee is injured as a result of horseplay only in very limited and rare circumstances.

HENDERSON, Justice (dissenting).

As a matter of work ethics and safety, this state should take a firm position to discourage, not encourage, horseplay in the work place. And, especially, when it is highly dangerous!

Phillips was injured as the natural consequences of his own tomfoolery (voluntary acts), unrelated to Morrell's interests, and a course of conduct purely personal in character. He departed from his employment. To throw sperm cords at fellow employees was not only not a part of his job, it was also stupid—particularly when he and his fellow employees had exceedingly sharp, long thin knives (9 inches long). Morrell's, as his employer, should not be financially responsible for this type of conduct.

In my opinion (1) this was substantial deviation from his employment and (2) it was also willful misconduct under SDCL 62–4–37. This horseplay was a violation of Morrell's work rules. Read SDCL 61–6–14.1. It expresses:

As used in this chapter, misconduct is:

(1) Failure to obey orders, rules or instructions, or failure to discharge the duties for which an individual was employed; or

(2) Substantial disregard of the employer's interests or of the employee's duties and obligations to his employer; or

(3) Conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee; or

(4) Carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design.

However, mere inefficiency, unsatisfactory conduct, failure to perform as the result of inability or incapacity, a good faith error in judgment or discretion, or conduct mandated by a religious belief which belief cannot be reasonably accommodated by the employer is not misconduct.

The authorities upon which I rely are: *Insurance Company of America v. Hogsett,* 486 S.W.2d 730 (Tenn.1972); *A.J. Kight v. Liberty Mutual Ins. Co.,* 141 Ga. App. 409, 233 S.E.2d 453 (1977); *Ford v. Barcus,* 261 Iowa 616, 155 N.W.2d 507 (1968).

In reviewing a case such as this, we must determine the substantiality of the deviation from the employment by viewing (a) the nature of the work performed and (b) any risk the employee exposes himself to by engaging in horseplay. This work environment was fast moving, highly structured, and in an environment where men were in close proximity—handling sharp, long knives. Throwing around objects was the height of folly. I cannot vote to affix liability on the employer and thereby reward foolishness.

I would reverse and dismiss the claimant's petition for benefits.