64 N.J. Super. 13 (1960)
165 A.2d 191
NATHANIEL P. JOY, PETITIONER-RESPONDENT,
v.
FLORENCE PIPE FOUNDRY CO., RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 24, 1960.
Decided November 14, 1960.
*16 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Martin L. Haines argued the cause for respondent-appellant (Messrs. Dimon, Haines & Bunting, attorneys).
Miss Ruth Rabstein argued the cause for petitioner-respondent (Messrs. Pellettieri & Rabstein, attorneys).
*17 The opinion of the court was delivered by FREUND, J.A.D.
Nathaniel P. Joy filed a petition in the Division of Workmen's Compensation, seeking an award under R.S. 34:15-7 et seq. for permanent injuries resulting from a cerebral hemorrhage allegedly precipitated by his activities while in respondent's employ. After the Division had entered an award in favor of petitioner, respondent filed an appeal to the Mercer County Court, pursuant to R.R. 5:2-5. The County Court, on trial de novo based on the record below, affirmed the award for 100 per cent permanent and total disability, from which the employer appeals.
Petitioner was 62 years of age when his disabling injury occurred. He suffered from hypertension and had experienced a mild stroke in 1954. He had been in respondent's employ for roughly 40 years, starting out as a "weight master" and handy man, and working his way up to the position of field erector, a post he held for the last 25 years of his employment. As field erector, he supervised the erection of pipes, valves, and gas and hydraulic machinery at the plant sites of respondent's customers. Joy could thus expect to be sent to jobs at distant places throughout the United States and Canada, for periods of from one to eight weeks. When on these assignments, his transportation, hotel, board and laundry expenses were paid by respondent. In addition, of course, Joy received his regular salary plus overtime, and extra travel time on trips of any considerable distance. He was normally provided with local labor at the job site; his responsibility was to see that the machines were safely and properly erected and placed in operating condition.
In early April of 1957, petitioner was notified by his employer to report to Alpena, Michigan, to supervise the erection of a large machine, valued at $425,000. Joy began work in Alpena on April 8. The job was difficult, taking place in a roofless building. The weather was extremely cold. It rained or snowed constantly, increasing the danger that the machine would rust. In addition, Joy had labor troubles with the local workmen.
*18 Toward the end of May, with the machine about 70 per cent completed, petitioner was called back to respondent's plant in Florence, New Jersey, to help in the completion of a second machine destined for Alpena. He worked in Florence until the middle of June, at which time he was ordered back to Alpena. After a weekend in which he "got some of [his] things straightened out," Joy reported back to Alpena, where he resumed his work on the morning of June 25. Both the weather and the working conditions continued to be miserable.
At the end of June or the beginning of July, the second machine, also valued in excess of $400,000, arrived from Florence. Petitioner was then required to supervise the erection of two machines, thus doubling his difficulties. Petitioner complained of "the type of help that you get in that part of the country," and noted that "you are really receiving material and running a job that ordinarily in the plant four or five men would be running." He further testified that the cranes available were not really capable of handling the 50-ton castings being lifted by them, thus creating a hazard "any time you pick up something over people's heads * * *."
These conditions continued for as long as petitioner worked on the job. He described the job as "one of the tough ones," and added, "I have had them down below zero and they wasn't (sic) as tough as this one."
On the afternoon of July 30, petitioner was helping to unload a 55-ton casting from a well car. The casting was tied down by steel rods, and as a worker was burning off the rods, one of them  about an inch and a quarter in diameter, and about 12 feet long, and weighing roughly 110 pounds  flew off the edge of the car and landed on Joy's right instep. The foot was badly bruised, swelled up, and was painful to step on. Medical aid was not immediately available, and petitioner decided to forego such attention. He remained at his job for the rest of the day, hobbling around as best he could. In the evening, at his room at the local hotel, he soaked the foot in Epsom salts.
*19 On the following day, Joy went to work as usual. He wore a brown canvas shoe, partially cut out, on his right foot, and hobbled back and forth between the two machine sites. By the end of the day, his foot was black and blue, and still swollen. He soaked the foot again, and retired at 9 P.M.
The next morning, August 1, 1957, Joy awoke at a quarter to six. As he proceeded to the bathroom, he felt pain in the calf of his left leg, and discovered that he could not support himself on that leg. Medical aid was summoned, and a diagnosis was made of cerebral hemorrhage, producing aspastic left hemiparesis. Petitioner is almost completely paralyzed on his left side.
In essence, the deputy director, as upheld by the County Court, concluded that the following finding was dictated by the evidence: The cumulative effect of petitioner's work during June and July of 1957, involving stress, strain and worry, including his foot injury, aggravated his pre-existing hypertension and precipitated the cerebral vascular injury which occurred on the early morning of August 1, 1957.
Our inquiry, while broad in the sense that we must make the ultimate determination as to whether petitioner's injury is compensable, R.S. 34:15-1 et seq., may be focused more precisely upon respondent's two major contentions: (1) that petitioner did not suffer an injury "by accident" within the intendment of the applicable statute, R.S. 34:15-7; and (2) that petitioner has not sufficiently established that his injury was work-connected, i.e., that it "[arose] out of and in the course of his employment." Ibid.
While the burden is upon the petitioner to prove the essentials of his claim by a preponderance of the probabilities, Ciuba v. Irvington Varnish & Insulator Co., 27 N.J. 127, 138 (1958), the specific issue of whether the injury was "by accident" is subject to a more balanced allocation of evidentiary responsibility. Spindler v. Universal Claim Corp., 11 N.J. 34, 38 (1952). Where expert proof or circumstances warrant an inference that an injury is work-connected, *20 the burden of showing that some other cause, for which the employer is not responsible, produced the injury is upon the respondent. The burden of production, and perhaps even of persuasion, is upon the employer to show that an apparently work-connected injury is the result of the employee's physical condition, for which the employer is not legally responsible. Atchison v. Colgate & Co., 3 N.J. Misc. 451, 452 (Sup. Ct.), affirmed 102 N.J.L. 425 (E. & A. 1925); Lilly v. Todd, 15 N.J. Super. 1, 6 (App. Div. 1951); Walsh v. Kotler, 43 N.J. Super. 139, 151 (Cty. Ct. 1956), affirmed 46 N.J. Super. 206 (App. Div. 1957).
In the sense of the statute, an "accident" is an "unlooked for mishap or untoward event which is not expected or designed." Bryant v. Fissell, 84 N.J.L. 72, 76 (Sup. Ct. 1913). Both in our statute and in its English prototype, it has been given its ordinary, popular meaning, and "injury by accident" means nothing more than "accidental injury." Ciuba v. Irvington Varnish & Insulator Co., supra, at p. 135. Clover, Clayton & Co., Ltd. v. Hughes (1910) A.C. 242. For an injury to be "accidental," it need not result from a particular traumatic force. Bollinger v. Wagaraw Building Supply Co., 122 N.J.L. 512, 518 (E. & A. 1939). Excluded from the category of "accident" are only those injuries solely the result of disease (other than "compensable occupational disease," see N.J.S.A. 34:15-31) or of design on the part of the petitioner. Bollinger v. Wagaraw Building Supply Co., supra, at p. 519.
An "accident" need not be a specific factual event, involving an unexpected mishap during the employee's performance of his duties. It may constitute a malfunctioning of the body itself, such as the breaking of a blood vessel, or the tearing of a ligament, if caused or accelerated by the doing of the work. Cf. Ciuba v. Irvington Varnish & Insulator Co., supra, at p. 136. Thus, if either the cause of the injury was of an accidental character, or if the injury was the effect of the routine performance of petitioner's duties, *21 the "by accident" requirement is satisfied. 1 Larson, Workmen's Compensation Law, § 38.00, p. 516.
As already suggested, the question of whether an injury occurred "by accident" is interwoven with the issue of medical causation. See Larson, supra, §§ 38.82, 38.83, pp. 563-67. We may better resolve the question "by directly viewing the problem in terms of medical causation within the framework of the requirement that the injury or death `arise out of' the employment." Dudley v. Victor Lynn Lines, Inc., 32 N.J. 479, 491 (1960).
We pause here to dispose of respondent's contention that Joy's injury was not work-related because the stroke occurred in his hotel room after a night's sleep. We interpret respondent's reasoning to be as follows: An accident arises "in the course of" employment when it occurs within the period of employment, at a place where the employee may reasonably be, and while he is reasonably fulfilling the duties of the employment, or doing something incidental thereto. Belyus v. Wilkinson, Gaddis & Co., 115 N.J.L. 43, 47 (Sup. Ct. 1935), affirmed 116 N.J.L. 92 (E. & A. 1936). Respondent argues that the accident, if any, was the cerebral hemorrhage, and because of the time and place of its occurrence, it did not satisfy any of the above tests. Therefore, even if it is shown to have "arisen out of" petitioner's employment, it did not occur "in the course of" such employment, and consequently petitioner is precluded from recovery.
There is a two-fold reply to this contention. In the first place, an employee whose work entails travel away from the employer's premises and who is injured while living away from home is considered to be "in the course of" his employment either if his injury is directly traceable to the conditions under which he was required to live, or if he was at all times on call. See Employers' Liability Assur. Corporation v. Warren, 172 Tenn. 403, 112 S.W.2d 837 (Sup. Ct. 1938); Larson, supra, § 25.21, pp. 386-87. The traveling employee is analogized to the resident employee who, if continually on call, is held to be continually "in *22 the course of his employment." Cf. Jasnig v. Winter, 115 N.J.L. 320, 322 (Sup. Ct. 1935), affirmed 116 N.J.L. 181 (E. & A. 1936); Taylor v. 110 S. Penna. Ave. Corp., 117 N.J.L. 346 (Sup. Ct. 1936); Robinson v. Levy, 20 N.J. Misc. 444, 28 A.2d 651 (W.C. Bureau 1942). Also see Jasaitis v. City of Paterson, 31 N.J. 81, 85 (1959); Annotation, 158 A.L.R. 606 (1945).
It is not disputed that petitioner, while supervising the construction at Alpena, was on call around the clock. Thus, even if we accepted respondent's literal interpretation of the statutory phrases, we would nonetheless conclude that petitioner suffered his stroke in the course of his employment. The fact that the hemorrhage occurred at a moment when petitioner was not engaged in the actual physical movements which he was hired to perform is, of course, irrelevant. Cf. Tocci v. Tessler & Weiss, Inc., 28 N.J. 582, 588 (1959); Waskevitz v. Clifton Paper Board Co., 7 N.J. Super. 1, 3 (App. Div. 1950); Buerkle v. United Parcel Service, 26 N.J. Super. 404 (App. Div. 1953).
Secondly, we deem it necessary to point out the error inherent in a too strict construction of the clause, "in the course of his employment." The primary inquiry should always be whether the injury for which compensation is sought is work-connected; the point in time at which that injury manifests itself should not be determinative. If the contributing or causative factors occur in the course of the employment, it is not necessary that the consequent disability manifest itself at that time. Cf. Maynard Electric Steel Casting Co. v. Industrial Commission, 273 Wis. 38, 76 N.W.2d 604, 609 (Sup. Ct. 1956). 99 C.J.S. Workmen's Compensation § 214, p. 710. Dean Larson accurately comments that:
"* * * in Workmen's Compensation the controlling event is something done to, not by, the employee, and since the real question is whether this something was an industrial accident, the origin of the accident is crucial, and the moment of manifestation should be immaterial." Larson, supra, § 29.22, at p. 449.
*23 Faced, as we are, with the statutory language, and in the absence of explicit legislative or judicial overriding of that language, Larson suggests that
"* * * the most practical solution is to insist upon a more careful reading of the exact phrasing of the present coverage formula. It does not say that the injury must `occur' or `be manifested' or `be consummated' in the course of employment. It merely says that it must `arise * * * in the course of employment.' `Arising' connotes origin, not completion or manifestation." Ibid., at p. 451.
Thus, if a strain occurs during the hours of actual employment, but no resulting symptoms are produced until after working hours, the disability, whether in the form of a heart attack, Maddox v. Buice Transfer & Storage Co., 81 Ga. App. 503, 59 S.E.2d 329, 330 (Ct. App. 1950); a perforation of an ulcer, Cutno v. Neeb Kearney & Co., 237 La. 828, 843, 112 So.2d 628, 631 (Sup. Ct. 1959); or a cerebral hemorrhage, may nonetheless be compensable. See Lockwood v. Parker, 132 N.J.L. 482 (Sup. Ct. 1945).
Respondent strongly urges that the award be reversed for insufficient evidence that petitioner's stroke was related to his work in a manner warranting compensation under our prior holdings. The thrust of respondent's argument is that Joy has not linked his injury to any particular exertion incidental to his employment, but rather, simply to the general stresses and strains of his work. If recovery is allowed on this basis, says respondent, then the employer becomes an insurer of the health of all employees who hold positions of responsibility.
Petitioner's expert medical evidence consisted of the testimony of Dr. DeGutierrez-Mahoney, a neurologist and neurosurgeon. In response to a hypothetical question embodying substantially all of the facts outlined above, Dr. DeGutierrez-Mahoney concluded that there was definitely a causal relationship between the cerebral hemorrhage and petitioner's employment difficulties at Alpena. The physician said:
"I might first say he had an inadequacy of circulation which led to this hemi-paresis. The inadequacy being due to cerebral thrombosis *24 and * * * the condition of the inadequacy of the circulation being precipitated by the conditions and experiences to which he was exposed and subjected at work during June and July of 1957."
The conditions were specified by Dr. DeGutierrez-Mahoney as being linked to "considerable tension, strain with which there was associated strain and spasm of the circulation." He further noted that "the pathology didn't take place in a moment. It took place over a period of moment (sic) after a period of strain which ultimately led to this vascular inadequacy."
In addition, it was brought out by Dr. DeGutierrez-Mahoney that the injury on July 30 to petitioner's right instep, while not in itself the cause of the hemorrhage, was "one other factor in this whole month and a half * * * of strain and tension."
Respondent produced two medical witnesses, Dr. Schisler, a general practitioner and respondent's plant physician, and Dr. Rupp, a neurologist. Dr. Schisler testified that he treated petitioner upon his return to Florence from Alpena. In response to a question as to whether there was any causal relationship between petitioner's stroke and his work for respondent, Dr. Schisler said, "I don't believe so." Dr. Rupp, who had examined petitioner on December 18, 1957, gave his opinion that "the circumstances of the work had nothing to do with the production of the stroke."
Having made the requisite independent study of the entire record, Russo v. United States Trucking Corp., 26 N.J. 430 (1958), we conclude that substantial evidence was presented to support the findings of the deputy director and the County Court judge that petitioner's injury was medically related to his employment activities. It is true that we have held that a conflict of medical opinion should generally be resolved in favor of a treating physician, here Dr. Schisler, rather than an examining physician, Dr. DeGutierrez-Mahoney. Fusco v. Cambridge Piece Dyeing Corp., 135 N.J.L. 160, 162 (E. & A. 1947); Bialko v. H. Baker Milk Co., 38 N.J. *25 Super. 169, 171 (App. Div. 1955), certification denied 20 N.J. 535 (1956). But the scales are balanced in the instant case by several factors, including Dr. Schisler's permanent association with respondent, his status as a general practitioner rather than a specialist, and the added point that he did not see Joy until more than two weeks after the hemorrhage occurred, and then at the request of respondent. We also take note of the uncertainty with which Dr. Schisler phrased his answer  "I don't believe so"  to the crucial question asked of him. Moreover, not only are we mindful of our duty to give due deference to the trier's opportunity to judge of the credibility of witnesses, R.R. 1:5-4(b), but our own common-sense observations impel us in the direction of the view of petitioner's specialist that the injury to Joy's foot and the hemorrhage a day and a half later were more than pure coincidence.
We turn to respondent's assertion that petitioner has linked his injury only to his daily work routine and not to any particular episode of undue exertion. It is, of course, conceded that if a work-related episode aggravates a pre-existing condition, the statutory requirement of causality is satisfied. Mewes v. Union Bldg. & Construction Co., 45 N.J. Super. 88, 92, 93 (App. Div.), certification denied 24 N.J. 546 (1957). Respondent further admits that under our decisions, the requirement of a showing of "unusual strain" or "unusual exertion" has been eliminated in cerebral accident cases. Fox v. City of Plainfield, 10 N.J. Super. 464, 469 (App. Div. 1950). See 99 C.J.S. Workmen's Compensation § 184(a), pp. 620-622. But it nonetheless maintains that the injury for which compensation is sought must be connected to an event or activity identifiable in time, and that two months of stress and strain do not provide satisfactory identification.
Generally, in prior cerebral hemorrhage cases in our jurisdiction where compensation was awarded, the employee's injury-producing activity encompassed a particular act, such as striking one's head against a wall, Markant v. Hommer *26 Tool & Mfg. Co., 28 N.J. Super. 566 (Cty. Ct. 1954); a highway collision producing great emotional strain, Reynolds v. Public Service Coordinated Transport, 21 N.J. Super. 528 (App. Div. 1952); or the lifting of a heavy object, Bialko v. H. Baker Milk Co., supra.
The relation of the employee's injury to a particular moment of crisis in his working day is by no means a prerequisite to recovery in workmen's compensation. In Fox v. City of Plainfield, supra, recovery was had on behalf of a deceased fireman who had suffered a hemorrhage in the course of fighting a fire. This court upheld the award on the ground that his exertions during the course of the fire, "with their concomitants of haste, danger, excitement, nervous strain, and elevation of his blood pressure," induced the hemorrhage. We stated at that time that:
"It is not perceived that there is any fundamental difference in law or in principle between an injury causatively resulting from a blood vessel being cut or crushed and one broken by an artificial disturbance of that blood vessel induced by the specific combination of circumstances related to this fire * * *." (at p. 469)
In Swann v. Town of Montclair, 19 N.J. Misc. 255, 18 A.2d 721 (W.C. Bureau 1941), petitioner shoveled snow or assisted in the removal of snow for 30 hours over a four-day period. He suffered a cerebral hemorrhage on the fourth day. An award was made to petitioner on the basis of testimony by his neurological specialists that "the stress and strain superimposed upon the petitioner by reason of his long hours, arduous work and severe exposure were the precipitating cause of his present condition."
In McClain v. Woodbury Board of Education, 30 N.J. 567 (1959), the court upheld an award to a school superintendent who suffered a myocardial infarction as a result of unusual strain and tension surrounding a school integration controversy. The tension had built up over a period of more than a year, and culminated at a heated PTA meeting at which petitioner suffered his heart attack. The court also *27 reiterated our rule that compensatory injury may result from nervous and emotional strain as well as from physical stress. Aromando v. Rubin Bros. Drug Sales Co., 47 N.J. Super. 286, 293 (App. Div. 1957), certification denied 26 N.J. 244 (1958).
It is a step only in degree, and not in kind, from these previous holdings to a recognition that compensable injury may result from forces which are gradual rather than immediate in nature, and that the element of time, if reasonable in length, should not bar recovery. This is the more recent trend of judicial decision. See Larson, supra, § 39.10, p. 568. For example in Fireman's Fund Indemnity Co. v. State Industrial Accident Commission, 39 Cal.2d 831, 250 P.2d 148 (Sup. Ct. 1952), the petitioner, 65 years of age, suffered a cerebral vascular injury following a 65-day period of strain and tension in his position as a labor negotiator. Over that period, he had worked about 11 hours a day, trying to conclude contract talks with certain unions. The court upheld a determination that the strain and tension had become excessive, and that their cumulative effect was to precipitate petitioner's stroke.
In Insurance Department of Mississippi v. Dinsmore, 233 Miss. 569, 102 So.2d 691 (Sup. Ct. 1958), suggestion of error overruled 104 So.2d 296 (Sup. Ct. 1958), it was held that a woman occupying a responsible clerical and executive job, who suffered a cerebral hemorrhage while engaged in office work, was entitled to compensation. Particularly pertinent was the court's ruling, 104 So.2d, at p. 298, that "the injury does not have to develop instantaneously but may accrue gradually over a reasonably definite and not remote time. For example, weeks of work and strain may lead to the cerebral thrombosis." Also see Lumbermen's Mut. Casualty Co. v. Industrial Accident Commission, 29 Cal.2d 492, 175 P.2d 823 (Sup. Ct. 1946); Furtardo v. American Export Airlines, Inc., 274 App. Div. 954, 83 N.Y.S.2d 745 (1948); Masse v. James H. Robinson Company, Inc., 301 N.Y. 34, 92 N.E.2d 56 *28 (Ct. App. 1950); Beveridge v. Industrial Accident Commission, 175 Cal. App.2d 592, 346 P.2d 545 (D. Ct. App. 1959); Jones v. California Packing Corp., 121 Utah 612, 244 P.2d 640 (Sup. Ct. 1952).
We do not consider that our present disposition will lead to blanket compensation or to a judicial broadening of the legislative categorization of occupational diseases. See N.J.S.A. 34:15-31. Respondent brings to our attention Jacobs v. Kaplan, 56 N.J. Super. 157 (App. Div. 1959), but that case in no way precludes recovery here. When, in Jacobs, we intimated that a "specific" or "particular" incident must provoke the breakdown, we were only requiring something more identifiable than the ordinary stresses and strains of living and working. The evidence here establishes a specific episode of strain and tension, extending over a period of several months and culminating in trauma a day and a half before petitioner was disabled. Lack of any such episode, either of momentary or extended duration, precluded recovery in Tyler v. Atlantic City Sewerage Co., 137 N.J.L. 16 (Sup. Ct. 1948), relied upon by respondent.
Regardless of the conditions petitioner experienced in the past, the facts clearly indicate that he was subjected to exceptionally trying circumstances on the Alpena assignment. To hold that his injury was occasioned by the tensions of this identifiable task is not the equivalent of ruling that the mere fact of employment imposes liability upon the employer. It is merely recognition that Joy's injury arose out of his employment and not from the wear and tear of life.
Respondent objects to the amount of the counsel fee allowed by the Division and the County Court to counsel for petitioner. The sum of $3,200 was allowed in the Division, payable $1,200 by petitioner and $2,000 by respondent; in the County Court, $2,750 was granted, payable $900 by petitioner and $1,850 by respondent.
Counsel fees in the Division are prescribed by N.J.S.A. 34:15-64, which permits the official conducting the hearing to allow to the successful party "a reasonable attorney fee, *29 not exceeding twenty per centum (20%) of the judgment * * *." The $3,200 allowance amounted to 16 1/2% of the total award.
Attorneys' fees in the County Court are within the discretion of that tribunal, subject only to a limitation of reasonableness. R.R. 5:2-5(f). The court's allowance of $2,750 equalled 14% of the award.
Respondent has supplied no particulars to support its contentions of excessiveness. The fact that no work schedule was produced by petitioner's counsel does not render the allowances excessive per se. Both the hearing officer and the County Court judge were in a position to estimate the worth of counsel's services. We are convinced that the deputy director did not abuse his discretion, Bobertz v. Town of Hillside, 126 N.J.L. 416, 418 (E. & A. 1941), and that the County Court judge did not set a fee "manifestly unreasonable" in amount. Neylon v. Ford Motor Co., 27 N.J. Super. 511, 514 (App. Div. 1953).
Affirmed.