STIVISON, APPELLANT, *v.* GOODYEAR TIRE & RUBBER COMPANY ET AL., APPELLEES.

[Cite as *Stivison v. Goodyear Tire & Rubber Co.* (1997), 80 Ohio St. 3d 498.]

*Workers' compensation — Employee assaulted and injured by fellow employee at restaurant near workplace — Injury not compensable when not sustained "in the course of" employment.*

(No. 96-1411 — Submitted September 10, 1997 — Decided December 31, 1997.)

APPEAL from the Court of Appeals for Hocking County, No. 95CA13.

After finishing a shift at the Goodyear Tire & Rubber Co. ("Goodyear") plant, appellant, Richard Stivison, stopped at a nearby restaurant where he was assaulted and injured by his fellow Goodyear employee Jeff McCormick. The impetus for the assault was a grudge McCormick bore against Stivison for informing their supervisor that McCormick had been leaving work early, an infraction of Goodyear's rules.

Stivison filed a workers' compensation claim for the injuries sustained in the assault. Goodyear opposed the allowance of the claim. Although the district hearing officer agreed with Goodyear, the regional board of review allowed the claim on appeal, and the Industrial Commission affirmed. Goodyear then appealed the commission's order to common pleas court and both parties moved for summary judgment. The trial court granted summary judgment to Goodyear and the appellate court affirmed.

The cause is now before this court pursuant to the allowance of a discretionary appeal.

_____

*Stewart Jaffy & Associates, Stewart R. Jaffy* and *Marc J. Jaffy*, for appellant.

*Vorys, Sater, Seymour & Pease* and *Joseph A. Brunetto,* for appellee Goodyear Tire & Rubber Co..

―――――――――――

**COOK, J.** The issue in this case is whether Stivison's broken nose and arm qualify as injuries "received in the course of, and arising out of," his employment.

For the purposes of workers' compensation, R.C. 4123.01(C) defines an "injury" as "any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment."

In *Fisher v. Mayfield* (1990), 49 Ohio St.3d 275, 551 N.E.2d 1271, we reaffirmed our interpretation of "in the course of" as involving the time, place, and circumstances of the injury and "arising out of" as involving causal connection between the injury and the injured person's employment. *Id.* at 277-278, 551 N.E.2d at 1274. We also "expressly recognize[d] the conjunctive nature of the coverage formula of 'in the course of and arising out of' the employment. * * * [A]ll elements of the formula must be met before compensation will be allowed." *Id.* at 277, 551 N.E.2d at 1274. Stivison argues that his injury is compensable solely because of a causal connection with his employment. This argument ignores half of the coverage formula recognized in *Fisher* by failing to acknowledge the necessity for temporal, spatial, and circumstantial connection.

The assault which injured Stivison occurred neither during his working hours, nor at his place of employment, nor while he was fulfilling his working duties. Stivison's injuries were, therefore, not sustained "in the course of" his employment, as that phrase is interpreted by Ohio law. Accordingly, summary judgment in favor of Goodyear was properly granted on this element alone, because, construing the evidence most strongly in favor of Stivison, reasonable minds could only conclude that the claimant here could not show that he met all the elements of the *Fisher* coverage formula.

2

Not only does Stivison's claim fall outside the limits of "course of employment," but also his claim is disqualified by the requirement of causal connection in the phrase "arising out of employment." Many uncompensable injuries can be said to bear some causal relation to employment, but legal analysis must focus upon the nature and degree of causal connection. Prosser & Keeton, Law of Torts (5 Ed.1984) 266, Section 41. The totality of the circumstances test set forth in *Lord v. Daugherty* (1981), 66 Ohio St.2d 441, 20 O.O.3d 376, 423 N.E.2d 96, supplies the necessary standard for determining sufficiency of causal relation:

"Whether there is a sufficient 'causal connection' between an employee's injury and his employment to justify the right to participate in the Workers' Compensation Fund depends on the totality of the facts and circumstances surrounding the accident, including, (1) the proximity of the scene of the accident to the place of employment, (2) the degree of control the employer had over the scene of the accident, and (3) the benefit the employer received from the injured employee's presence at the scene of the accident." *Id.* at syllabus.

The restaurant where Stivison was injured is about a mile from the Goodyear plant. Goodyear has no control over the restaurant and received no benefit from Stivison's presence there.[1] Therefore, the causal relation that existed between Stivison's employment and his injury does not satisfy any of the enumerated elements of the *Lord* totality of the circumstances test. Because there are no additional facts or circumstances compelling a finding of causation, Stivison has failed to establish the requisite causal connection.

Noting cases where this court has allowed compensation for off-site injuries, Stivison argues that the court of appeals overemphasized the fact that he was not on Goodyear's premises when his injury occurred. Although all

3

compensable injuries must both be received in the course of and arise out of employment, it is true that there are cases where compensation is allowed despite failure to comply with all the factors of the *Fisher* coverage formula. In *Fisher*, we noted that no single factor is controlling, that through the recurrence of similar fact patterns, rules have developed that define categories of exceptions. *Id.*, 49 Ohio St.3d at 280, 551 N.E.2d at 1276. Some of these exceptions allow recovery for off-site injuries (for example, the exception for employer-sponsored recreational activity cases and the "zone of employment" and "special hazard" exceptions to the "coming and going" cases), but Stivison does not attempt to argue that his injury falls within an established exception. Therefore, cases allowing recovery for off-site injuries based on established exceptions are inapposite here.

Stivison also argues that *Ryan v. Connor* (1986), 28 Ohio St.3d 406, 28 OBR 462, 503 N.E.2d 1379, which involves a heart attack suffered away from business premises, is an example of compensation for an off-site injury. This argument fails since the heart attack was compensable only because the stress which resulted in the attack was suffered *at work*, just as an injury resulting from workplace exposure to dangerous substances is compensable regardless of where the employee is when symptoms appear. See, *e.g., State ex rel. Burnett v. Indus. Comm.* (1983), 6 Ohio St.3d 266, 6 OBR 332, 452 N.E.2d 1341. Stivison's injury is not analogous to the heart attack in *Ryan* because there was no workplace effect on Stivison comparable to the stress supporting the compensability of the heart attack.

Because, as a matter of law, Stivison's injuries fall short of meeting the criteria for both "in the course of" and "arising out of" employment and fit no

exception, we hereby affirm the appellate court's judgment affirming summary judgment.

*Judgment affirmed.*

MOYER, C.J., PFEIFER and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, J., dissents.

RESNICK and F.E. SWEENEY, JJ., dissent.

**FOOTNOTE**:

1.    Stivison argues that the third element of the totality of the circumstances test is primarily satisfied by the benefit to the employer from Stivison's answering truthfully when questioned about McCormick's absence from work.    This argument arises from a misunderstanding of the benefit required; the test is whether there is a benefit to the employer *from the employee's presence at the scene of the accident.*    Stivison also claims an "additional" benefit to Goodyear was that he intended to take food from the restaurant back to employees on the night shift, as well as cashing his paycheck and eating a meal. Goodyear did not ask Stivison to purchase and deliver food, and there is no reason to suppose Stivison's delivery of food was a benefit to Goodyear.

_____

**ALICE ROBIE RESNICK, J., dissenting**.    Appellee, Goodyear Tire & Rubber Company ("Goodyear"), had been experiencing attendance problems at its Logan, Ohio plant.    On November 6, 1992, claimant-appellant, Richard Stivison, was approached by his supervisor, Bill Egger, who asked whether a co-worker, Jeffrey McCormick, had left work early the previous day.    Believing it was his duty to answer truthfully, claimant told Egger that McCormick had been leaving work early.    Because of this event, McCormick chose to assault claimant two weeks later at a time and place remote from claimant's employment, leaving claimant

with two black eyes, a fractured nasal bone, and two broken bones in his left forearm requiring steel plates.

The message sent today by the majority to the Ohio worker is that if you suffer disabling injuries as a result of having truthfully answered your employer's work-related inquiries, it is you alone who will bear the burden of economic loss. This is indeed a curious public policy in light of the fact that the theory upon which workers' compensation is based is that the burden of economic loss attributable to the risks of employment should be borne by the industry rather than by the individual or society as a whole. *State ex rel. Munding v. Indus. Comm.* (1915), 92 Ohio St. 434, 450, 111 N.E. 299, 303, overruled in part on other grounds, *State ex rel. Crawford v. Indus. Comm.* (1924), 110 Ohio St. 271, 143 N.E. 574.

Moreover, the majority's decision stands for the absurd proposition that compensability turns on whether the criminal perpetrating the assault is considerate enough of claimant's compensation position to have assaulted him or her within the "zone of employment" or while claimant was performing some activity incidental to employment. I must, therefore, respectfully but strenuously dissent.

The majority begins its analysis by identifying the broad issue of whether claimant's "broken nose and arm qualify as injuries 'received in the course of, and arising out of,' his employment." Although Goodyear does not deny that the conversation between claimant and his supervisor regarding McCormick's attendance at work satisfies the "arising out of" prong of the coverage formula, the majority takes it upon itself to conclude that "[n]ot only does Stivison's claim fall outside the limits of 'course of employment,' but also his claim is disqualified by the requirement of causal connection in the phrase 'arising out of employment.' "

6

The majority's application of the "arising out of" prong is so fundamentally flawed that it is impossible to refute on its own terms. Essentially, the majority applies the "totality of circumstances" test set forth in *Lord v. Daugherty* (1981), 66 Ohio St.2d 441, 20 O.O.3d 376, 423 N.E.2d 96, at the syllabus, to the place and circumstances surrounding the assault itself, rather than to the event or incident which precipitated the assault.

"Assaults arise out of the employment * * * if the reason for the assault was a quarrel having its origin in the work." 1 Larson Law of Workmen's Compensation (1997) 3-200, Section 11.00. Thus, "[a]part from any environmental risk, causal connection with the employment may be shown by connecting with the employment the subject matter of the dispute leading to the assault." *Id.* at 3-238, Section 11.12. It is mere tautology to suggest, as the majority does, that the assault itself is the cause to which the "arising" test is to be applied. This is as much as to say that the assault is the cause of the assault. The assault is the *effect*, not the cause, of something, and the question is whether that something arose out of employment. The cause — the reason, the subject matter — of the assault in this case was the work-related conversation between claimant and his supervisor regarding McCormick's attendance at work. There is, therefore, a causal relationship between claimant's injuries and his employment.

The majority, citing Prosser & Keeton, Law of Torts (5 Ed.1984) 266, Section 41, seeks to justify its misapplication of the "arising" prong by explaining that "[m]any uncompensable injuries can be said to bear some causal relation to employment, but legal analysis must focus upon the nature and degree of causal connection." However, if the majority had simply turned to Prosser & Keeton, Law of Torts, *supra*, at 568, Section 80, it would have discovered that "workers'

7

compensation acts * * * do not rest upon any theory of tort liability." Indeed, as Professor Larson explains:

"It is instantly apparent that 'arising out of the employment' does not mean exactly the same thing as 'legally caused by the employment.' It is true, as many courts and writers have said, that 'arising' has something to do with causal connection; but there are many shades and degrees of causal connection, of which 'legal' or 'proximate' cause is only one. * * * [I]n the 'arising' phrase the function of the employment is *passive* while in the 'caused by' phrase it is *active*. When one speaks of an event 'arising out of employment,' the initiative, the moving force, is something other than the employment; the employment is thought of more as a *condition* out of which the event arises than as the force producing the event in an affirmative fashion. In tort law the beginning point is always a person's *act*, and the act causes certain consequences. In workers' compensation law the beginning point is not an act at all; it is a relation or condition or situation — namely, employment. * * * Thus, at the very outset, it is plain that the attempt to make 'arising' equivalent to 'causation' is blocked by the words themselves." (Emphasis *sic*; footnote omitted.) 1 Larson, *supra*, at 3-10 to 3-11, Section 6.60.

It is mere sophistry to suggest, on the basis of misapplied tort theories and environmental factors, that a claimant who is beaten in retaliation for a work-connected conversation with his supervisor has failed to show that his injuries arose out of employment. Any layperson can see the connection between employment and injury.

The real question in this case, one which the majority has completely ignored, is whether "delayed-action" injuries are compensable. A delayed-action injury is an injury which has its originating or contributing cause in an incident or event that occurs entirely within the time and place limits of the employment, but

8

has its moment of physical impact or manifestation at a time and place remote from the employment.

The conceptual difficulty encountered by these kinds of injuries lies in too strict an application of the "in the course of" prong of the coverage formula. By virtue of its uncompromising insistence on independent satisfaction of the "course" prong, the majority ignores that particular times, places, and circumstances "in the course of" employment precipitated claimant's injuries and recovery should be allowed.

In defining "injury," R.C. 4123.01(C) sets forth the basic coverage requirement that, to be compensable, an injury must be "received in the course of, and arising out of, the injured employee's employment." This coverage formula "shall be liberally construed in favor of employees and the dependents of deceased employees." R.C. 4123.95. This means that the phrase "received in the course of, and arising out of" must be liberally construed in favor of awarding benefits. *Fisher v. Mayfield* (1990), 49 Ohio St.3d 275, 278, 551 N.E.2d 1271, 1274. This is precisely the approach that the Industrial Commission took when it determined that considering R.C. 4123.95 and the totality of the sequence of events, the assault occurred "in the course of" and "arising out of" appellant's employment.

In *Fisher, supra*, 49 Ohio St.3d at 277, 551 N.E.2d at 1274, the court announced:

"We now expressly recognize the conjunctive nature of the coverage formula of 'in the course of and arising out of' the employment. Therefore, all elements of the formula must be met before compensation will be allowed."

As explained in Fulton, Ohio Workers' Compensation Law (1991) 147, Section 7.5:

9

"Although most discussions of the coverage formula analyze the 'arising out of' and the 'in the course of' tests independently, the factors actually merge into a single test of work-connectedness. [*Bralley v. Daugherty* (1980), 61 Ohio St.2d 302, 15 O.O.3d 359, 401 N.E.2d 448.] The Ohio Supreme Court expressly acknowledged the conjunctive nature of the coverage formula in *Fisher v. Mayfield*."

Yet the majority insists on separately and strictly applying each "half of the coverage formula." This approach echoes the appellate court's view that "the two prongs [of the coverage formula] are distinct" and Goodyear's argument that *Fisher* "acknowledged the dual nature of the test of compensability set forth in R.C. 4123.01(C)." Although the majority, the court of appeals, and Goodyear offer no insight into how that conclusion has been arrived at, their methods of analysis suggest that they drew support from the fact that *Fisher* continued to require that "all elements of the formula must be met before compensation will be allowed," *Fisher,* 49 Ohio St.3d at 277, 551 N.E.2d at 1274, and then proceeded to apply each element in succession.

However, the view of the majority in *Fisher*, that the coverage formula is conjunctive in nature, stands in stark contrast to that of the dissenting justices, that there is a "dual statutory requirement for establishing a compensable injury." *Id.*, 49 Ohio St.3d at 281, 551 N.E.2d at 1277. The fact that *Fisher* applied each prong of the coverage formula separately under the factual pattern before it does not mean that the court opted for a strict bifurcation of the coverage formula in all cases. To the contrary, the court specifically warned that "no one test or analysis can be said to apply to each and every factual possibility. Nor can any one factor be considered controlling. Rather, a flexible and analytically sound approach to

10

these cases is preferable. Otherwise, the application of hard and fast rules can lead to unsound and unfair results." *Id.*, 49 Ohio St.3d at 280, 551 N.E.2d at 1276.

In a particularly poignant analysis, the Court of Appeals for Williams County, in *Fletcher v. Northwest Mechanical Contr., Inc.* (1991), 75 Ohio App.3d 466, 470-471, 599 N.E.2d 822, 825, fn. 1, explained as follows:

" '[I]t should never be forgotten that the basic concept of compensation coverage is unitary, not dual, and is best expressed in the term "work connection" * * *. [A]n uncompromising insistence on independent application of the two portions of the test can, in certain cases, exclude clearly work-connected injuries.' 1 Larson, The Law of Workmen's Compensation (1989) 3-3, Section 6.10. We do not believe that the Supreme Court of Ohio opted for a strict application of the two prongs of the test. The Supreme Court of Ohio in *Fisher, supra*, 49 Ohio St.3d at 277, 551 N.E.2d at 1274, made reference to *Strother v. Morrison Cafeteria* (Fla.1980), 383 So. 2d 623, as having '* * * embarked on a well-reasoned analysis as to whether that court had developed inconsistent constructions of the basic coverage formula * * *.' It was noted by the court in *Strother, supra*, at 625, that it had, in some decisions, bifurcated the elements of 'arising out of' and 'in the course of' and in other cases merged them. That court held in favor of bifurcation, but found no inconsistency. It found '* * * the construction of "arising out of and in the course of employment," proposed by Larson * * * to be reasonable and conducive to the basic purposes of the workers' compensation act.' *Id.* at 628. The Florida Supreme Court went on to state that Larson:

" '* * * suggests that the more reasoned approach, consistent with the goals of workers' compensation acts, is not to apply these concepts entirely independent of each other but rather to view them as parts of a single test of work connectedness where deficiencies in the strength of one factor may, in some cases

be made up by the strength in the other.' *Id.* at 624; see, also, 1 Larson, *supra*, 3-3, Section 6.10 and 1A Larson, *supra*, 5-438, Sections 29.00 and 29.10.

"That this 'quantum theory of work-connection' or 'sliding scale' analysis is inescapable is evident by the analysis in *Fisher, supra*. In *Fisher*, the court stated that '* * * whether appellant's injuries arose out of her employment is determined from the totality of circumstances, using the factors set forth in *Lord, supra*.' *Id.,* 49 Ohio St.3d at 278-279, 551 N.E.2d at 1275. *Lord* involved a situation in which 'there was no fixed employment situs, due to the nature of decedent's occupation * * *.' *Id.*, 66 Ohio St.3d at 442, 20 O.O.3d at 377, 423 N.E.2d at 97. Implicitly, therefore, *Lord* dealt with the 'arising out of' aspect of the two-prong test. Yet *Lord*, in reciting the 'totality of the facts and circumstances' relied on *Bralley, supra. Bralley*, in turn, was a 'zone of employment' case, which would involve, according to *Fisher, supra*, an analysis as to whether the employee is 'in the course of' his employment. The 'totality of circumstances' test, therefore, arose by virtue of application to both prongs of the requirement that the injury be 'received in the course of, and arising out of, the injured employee's employment.' As further illustration, both *Bralley, supra*, 61 Ohio St.2d at 303, 15 O.O.3d at 360, 401 N.E.2d at 449, and *Lord, supra*, 66 Ohio St.2d at 444, 20 O.O.3d at 378, 423 N.E.2d at [98], relying on the very same cases, stated the respective issue to be '* * * whether a "causal connection" existed between an employee's injury and his employment either through the activities, the conditions, or the environment of the employment.' It is apparent that the same factors have arisen with reference to both prongs of the test. In fact, although the court in *Fisher* relegated *Lord* to the 'arising out of' prong of the test, it nevertheless employed some of the *Lord* factors to its analysis of whether appellant was 'in the course of' her employment.

12

A strict application of the bifurcated prongs of 'in the course of' and 'arising out of' is, therefore, not only potentially unjust, but is clearly unworkable."

It is precisely in the delayed-action case that a strict application of the coverage formula works its greatest injustice. See 2 Larson, Law of Workmen's Compensation (1997) 5-483 to 5-485, Section 29.21(a). As Professor Larson explains, the total "quantum" of work-connection should amount to compensability, "in the case of a foreman who angers a subordinate during working hours by firing him and later, while asleep on the sand at a beach the following Sunday, is assaulted by the disgrunted [*sic*] employee. Yet insistence on independent satisfaction of the 'course' and 'arising' tests results in an almost insuperable barrier to compensation for this unquestionably work-connected injury." *Id.* at 5-483, Section 29.21.

The usual off-premises course-of-employment rules were developed in those cases where the entire injurious event, both in cause and effect, occurs beyond the strict time, place, and activity limits of the employment. In such cases, the situs of employment or the activity at hand is crucial, since there is nothing else to connect the employment to the injury. Since no single unit of injury can be said to lie within the strict bounds of employment, other factors become critical. Thus, where the injurious incident from beginning to end occurs beyond the geographical boundaries of the employer's premises, or while the employee is not in the actual performance of his or her duties, the inquiry becomes whether the employee was within the "zone of employment," was exposed to a "special hazard," or was engaged in activity incidental to the employment, as the case may be. See *MTD Products, Inc. v. Robatin* (1991), 61 Ohio St.3d 66, 572 N.E.2d 661; *Littlefield v. Pillsbury Co.* (1983), 6 Ohio St.3d 389, 6 OBR 439, 453 N.E.2d 570;

*Lord*; *Bralley, supra*; *Kohlmayer v. Keller* (1970), 24 Ohio St.2d 10, 53 O.O.2d 6, 263 N.E.2d 231; *Indus. Comm. v. Barber* (1927), 117 Ohio St. 373, 159 N.E. 363.

The fact pattern presently before the court is not one in which the cause and manifestation of injury coincide. The entire injurious event cannot be said to have occurred entirely remote from the employment. While the moment of impact or manifestation of injury occurred beyond the employment setting, the cause of injury originated in a risk connected with the employment. As Professor Larson explains:

"In all the[se] cases * * *, the common element is the fact that [the] originating cause of the injury is something that occurs entirely within the time and place limits of the employment. The time bomb, so to speak, is constructed and started ticking during working hours; but it happens to go off at a time and place remote from the employment. The hazards of the employment, whether the animosity of a fired employee, a needle-like shaving in the eyebrow, or dynamite cap in the pocket, follow the claimant beyond the time and space limits of his work, and there injure him." (Footnote omitted.) 2 Larson, *supra*, at 5-506 to 507, Section 29.22.

The usual course-of-employment rules were simply not designed for cases where the manifestation of an injury occurs later than the precipitating event.

Moreover, in the case of an off-premises assault, the strict view allows the vagaries of the attacker to emerge as the decisive factor in determining whether the injury was received in the course of employment. In the instant case, the majority denies compensation in part because claimant was assaulted at Jack's Steakhouse under circumstances which, at that time, put him beyond the reach of the "zone of employment," "special hazard," and "incidental activity" exceptions. Following this reasoning, claimant's injuries would be compensable had

14

McCormick been considerate enough of claimant's compensation position to have assaulted him in Goodyear's parking lot, *Marlow v. Goodyear Tire & Rubber Co.* (1967), 10 Ohio St.2d 18, 39 O.O.2d 11, 225 N.E.2d 241, or while he was on his way to work on a street maintained by Goodyear, *Indus. Comm. v. Barber, supra*, or on a public street between the company parking lot and the plant, *Baughman v. Eaton Corp.* (1980), 62 Ohio St.2d 62, 16 O.O.3d 45, 402 N.E.2d 1201, or crossing a railroad track immediately adjacent to the plant's entrance, *Indus. Comm. v. Henry* (1932), 124 Ohio St. 616, 180 N.E. 194, or while claimant was attending a company-sponsored picnic, *Kohlmayer v. Keller* (1970), 24 Ohio St.2d 10, 53 O.O.2d 6, 263 N.E.2d 231, or in some way promoting the employer's interests, *Indus. Comm. v. Davison* (1928), 118 Ohio St. 180, 160 N.E. 693; *Outland v. Indus. Comm.* (1940), 136 Ohio St. 488, 17 O.O. 92, 26 N.E.2d 760.

The more reasoned view, as Professor Larson explains, is that "in Workmen's Compensation the controlling event is something done *to*, not *by*, the employee, and since the real question is whether this something was an industrial accident, the *origin* of the accident is crucial, and the moment of manifestation should be immaterial." (Emphasis *sic*.) 2 Larson, *supra*, at 5-504, Section 29.22.

In *Indus. Comm. v. Pora* (1919), 100 Ohio St. 218, 125 N.E. 662, Pora was employed as a molder's helper and was directed by his supervisor to go to another part of the plant and obtain an electric riddle. The electric riddle was being used by another molder and his helper. Pora and the other helper argued over possession of the implement, and the second helper struck Pora over the head with a shovel. Pora died the following day, and his widow filed a claim with the Industrial Commission.

The commission argued that, at the time of the assault, Pora was not in the course of his employment, relying in part on *Little Miami RR. Co. v. Wetmore*

15

(1869), 19 Ohio St. 110. In *Wetmore*, the plaintiff was a passenger on defendant's train. The plaintiff apparently used some abusive language toward one of defendant's employees, who thereupon assaulted and beat the plaintiff with a hatchet. Plaintiff sued the employer on the basis of *respondeat superior*, or vicarious liability. The court held that jury instructions had been misleading and that the defendant would not be liable if its employee had acted out of personal animosity and, therefore, not in the course of his employment.

The court in *Pora* held in claimant's favor and distinguished *Wetmore* as follows:

"The outstanding difference is that in the *Wetmore case* the inquiry was one to ascertain whether the employee *committing the assault* was in the course of his employment; while here the inquiry is, Was the employee *assaulted* in the course of *his* employment?

"Without derogation in any sense to the rights of Pora it may be admitted without qualification that the employee who assaulted him was acting wholly outside the course of his employment." (Emphasis *sic*.) *Id.,* 100 Ohio St. at 221-222, 125 N.E. at 663.

Thus, this court has fully embraced the concept that the controlling event in workers' compensation is something done to, not by, the employee. It should logically follow that an off-premises assault is a compensable event where the originating cause is something that occurs within the time and place limits of the employment.

However, for many years, the court judicially limited the payment of workers' compensation only to those employees whose physical injuries resulted from contemporaneous physical injury or physical trauma. The court allowed claims where the full extent of the injury became manifest later than the

precipitating event, but was compelled to identify some physical trauma, however slight, which coincided with the workplace cause. Thus, delayed injuries or death resulting from contact with poisonous gases or substances, forces of nature or artificial heat, eating contaminated food, or being vaccinated at work were held compensable on the basis that the injury-producing event caused some type of contemporaneous physical impact or harm, whether it be a derangement of bodily functions, degenerative changes in tissues, or simply a needle prick. *Sebek v. Cleveland Graphite Bronze Co.* (1947), 148 Ohio St. 693, 36 O.O. 282, 76 N.E.2d 892, overruled in part, *Johnson v. Indus. Comm.* (1955), 164 Ohio St. 297, 58 O.O. 90, 130 N.E.2d 807; *Malone v. Indus. Comm.* (1942), 140 Ohio St. 292, 23 O.O. 496, 43 N.E.2d 266, overruled in part, *Village v. Gen. Motors Corp.* (1984), 15 Ohio St.3d 129, 15 OBR 279, 472 N.E.2d 1079; *Indus. Comm. v. Bartholome* (1934), 128 Ohio St. 13, 190 N.E. 193, overruled in part by *Johnson, supra*; *Spicer Mfg. Co. v. Tucker* (1934), 127 Ohio St. 421, 188 N.E. 870; *Indus. Comm. v. Helriggle* (1933), 126 Ohio St. 645, 186 N.E. 711; *Indus. Comm. v. Palmer* (1933), 126 Ohio St. 251, 185 N.E. 66; *Indus. Comm. v. Burckard* (1924), 112 Ohio St. 372, 147 N.E. 81; *Indus. Comm. v. Roth* (1918), 98 Ohio St. 34, 120 N.E. 172. On the other hand, compensation had been denied for a heart condition and cerebral hemorrhage resulting from emotional distress, anxiety, or worry. *Szymanski v. Halle's Dept. Store* (1980), 63 Ohio St.2d 195, 17 O.O.3d 120, 407 N.E.2d 502; *Toth v. Std. Oil Co.* (1953), 160 Ohio St. 1, 50 O.O. 476, 113 N.E.2d 81.

This limitation was removed in *Ryan v. Connor* (1986), 28 Ohio St.3d 406, 28 OBR 462, 503 N.E.2d 1379. The court overruled *Szymanski* and *Toth, supra*, and held:

17

"A physical injury occasioned solely by mental or emotional stress, received in the course of, and arising out of, an injured employee's employment, is compensable under R.C. 4123.01(C)." *Id.* at paragraph one of the syllabus.

In so holding, the court found "no reasonable basis for continuing to judicially limit the payment of workers' compensation only to those employees whose physical injuries resulted from 'contemporaneous physical injury or physical trauma.' " *Id.*, 28 Ohio St.3d at 408, 28 OBR at 464, 503 N.E.2d at 1381.[2]

The requirement of contemporaneous physical impact having been removed, there is no longer any lawful impediment to recognizing "delayed-action" injuries as compensable. Other courts have done so, and their reasoning is quite persuasive. In *Daniello v. Machise Express Co.* (1972), 119 N.J.Super. 20, 289 A.2d 558, affirmed (1975), 122 N.J.Super. 144, 299 A.2d 423, claimant, a truck driver, was splashed by jet fuel during work, which permeated his uniform and body with fumes. After his workday was done, he drove home and lit a match to burn some trash, whereupon he caught fire. The employer argued that the accident did not arise in the course of employment, since the actual burn injuries occurred at claimant's home.

The court held in favor of compensation, finding that a strict application of the "course" test "fail[s] to adhere to the fundamental objects of workmen's compensation laws." *Id.*, 119 N.J.Super. at 27, 289 A.2d at 561. The court noted the case of *Secor v. Penn Service Garage* (1955), 35 N.J.Super. 59, 113 A.2d 177, affirmed (1955), 19 N.J. 315, 117 A.2d 12, which presented similar facts, but where the match was struck at the place of employment. Compensation in that case was allowed. The court in *Daniello* declined to reach a different result on the basis of where the match was struck, explaining that "the recovery in one and the

18

lack of recovery in the other can only be distinguished on factitious or synthetic grounds which may only be considered as illusory and without substance." *Id.*, 119 N.J.Super. at 28, 289 A.2d at 562. See, also, *Lujan v. Houston Gen. Ins. Co.* (Tex.1988), 756 S.W.2d 295.

The difference between the facts in *Secor* and the facts in *Daniello* is the same difference that prevails between the facts in *Pora* and in the case *sub judice*. It is no less "factitious or synthetic" to allow recovery in *Pora* and deny recovery here, on the basis of where the assault was perpetrated, than it is to allow recovery in *Secor* and deny recovery in *Daniello*, on the basis of where the match was struck.

In *Joy v. Florence Pipe Foundry Co.* (1960), 64 N.J.Super. 13, 165 A.2d 191, the facts were similar to those presented in *Toth, supra, i.e.,* a cerebral hemorrhage resulting from workplace anxiety and stress. In finding the injury compensable, the court in *Joy* explained:

"Secondly, we deem it necessary to point out the error inherent in a too strict construction of the clause, 'in the course of his employment.' The primary inquiry should always be whether the injury for which compensation is sought is work-connected; the point in time at which that injury manifests itself should not be determinative. If the contributing or causative factors occur in the course of employment, it is not necessary that the consequent disability manifest itself at that time." *Id.*, 64 N.J.Super. at 22, 165 A.2d at 196.

In *Graybeal v. Montgomery Cty. Bd. of Supervisors* (1975), 216 Va. 77, 216 S.E.2d 52, a prosecutor was injured by the explosion of a bomb left at his home by an individual whom the prosecutor had tried five years and eight months previously. The court held the injury compensable, pointing out that "[i]n the realities of the present case, the course from prosecution to desire-for-revenge to

19

injury was unbroken, constituting a single work-connected incident." *Id.*, 216 Va. at 80, 216 S.E.2d at 54-55.

*Bearshield v. Gregory* (S.D.1979), 278 N.W.2d 166, involved a set of facts somewhat similar to *Graybeal*, but the target was a police officer. The decedent was murdered while on vacation in revenge for his actions undertaken in the course of his duties as a police officer. Much like the court of appeals in the case *sub judice*, the hearing examiner had concluded that, despite the patent inequity, he could not interpret South Dakota case law so as to conclude that decedent was in the course of his employment while on vacation and performing no task related to his employment.

The South Dakota Supreme Court, holding in claimant's favor, explained as follows:

"We agree with the hearing examiner that the application of the rule as it is presented in this Court's previous decisions would seem to preclude recovery by [claimant]. The cases cited and discussed above, however, are distinguishable from the instant case because in the above cases, the 'occurrence' of the injury coincides with the 'arising' of the injury, as is the case in nearly all worker's compensation injuries. This prevalent coincidence tends to lull us into equating the two words. The instant case, however, brings them into sharp contrast. The actual injury 'occurred' on July 26, 1976, but it cannot be said that it 'arose' at that time. The actual occurrence was merely the culmination of something that had been 'arising' for quite some time in the course of decedent's employment and was triggered by his performance of his duty in keeping [the murderer's] mother in jail. Thus, it seems that the injury indeed 'arose in the course of' decedent's employment." *Id*., 278 N.W.2d at 169.

The court analogized the murderer's animosity to "a time bomb which was fueled by various arrests and contacts, ignited by the jailing of [the murderer's] mother, and happened to explode while decedent was on vacation. Particular times, places and circumstances 'in the course of employment' precipitated the injury and recovery should be allowed." *Id.*, 278 N.W.2d at 170.

Not only is the reasoning employed by these various courts sound, but the facts of the cases are perhaps the most eloquent argument that can be made in support of *Fisher*'s warning that "the application of hard and fast rules can lead to unsound and unfair results." *Fisher*, 49 Ohio St.3d at 280, 551 N.E.2d at 1276. The concept of workers' compensation coverage, in its most basic and fundamental form, is unitary, not dual, and where inquiry is made as to the "course" or "arising" aspects of the injury, it is not for the purpose of determining those questions in the first instance, but only to ensure that compensation is limited to those employees whose injuries are truly work-connected. See, *e.g.*, *Rogers v. Allis Chalmers Mfg. Co.* (1949), 85 Ohio App. 421, 424-425, 40 O.O. 293, 295, 88 N.E.2d 234, 236, affirmed (1950), 153 Ohio St. 513, 41 O.O. 514, 92 N.E.2d 677; *Anderson v. Falcon Drilling Co.* (Okla.1985), 695 P.2d 521, 526-527. It is patently unjust and inconsistent with the beneficent purposes of workers' compensation to bifurcate the injury into two separate events of cause and manifestation and then respectively apply each prong of the coverage formula thereto. "[T]he injurious incident (whether a quarrel or a work strain or a sliver-in-the-eye episode) 'from origin to ending must be taken to be one,' [and] it should be sufficient that the origin of this single unit of injury lies within the bounds of employment, whether the ending, in the form of the actual impact, falls within those bounds or not." (Citation omitted.) 2 Larson, *supra*, at 5-517, Section 29.22.

In light of all of the foregoing, it is my opinion that the holding in this case should be as follows:

"In the delayed-action case where the cause and manifestation of an injury fail to coincide, the injury is a compensable one under R.C. 4123.01(C) if its original or contributing cause is employment-related and occurs within the time and place limits of the employment, regardless of the time, place, and circumstances in which the injury manifests itself or the physical impact occurs."

Applying this holding to the facts of the case *sub judice*, it is clear that the court of appeals erred in affirming summary judgment in favor of Goodyear. The precipitating event or original cause of the assault by McCormick and the attendant injuries to claimant was the conversation between claimant and his supervisor regarding McCormick's attendance habits. Since this event was employment-related, it must be concluded that the original cause of claimant's injuries arose out of his employment with Goodyear. Also, since the conversation took place entirely within the time, place, and circumstances of the employment, it must be concluded that the injury occurred in the course of claimant's employment with Goodyear.

The fact that the assault occurred two weeks later than the precipitating event and approximately one mile away from the Goodyear plant is irrelevant not only for purposes of coverage under R.C. 4123.01(C), but for purposes of so-called legal causation as well. Physical or temporal remoteness does not itself eviscerate the causal connection, either under workers' compensation law or tort law. 2 Larson, *supra*, at 5-501, Section 29.21(f); 1 Larson, *supra*, at 3-258 to 3-266, Section 11.13. See, also, *Estates of Morgan v. Fairfield Family Counseling Ctr.* (1997), 77 Ohio St.3d 284, 312-313, 673 N.E.2d 1311, 1332.

22

Accordingly, justice demands that the judgment of the court of appeals be reversed, and the cause be remanded to the trial court to enter judgment in favor of claimant.

F.E. Sweeney, J., concurs in the foregoing dissenting opinion.

**FOOTNOTE**:

2.      At the time *Ryan* was decided, the General Assembly had recently amended the definition of "injury" contained in R.C. 4123.01(C).  Am.Sub.S.B. No. 307, 141 Ohio Laws, Part I, 718.  That amendment, effective August 22, 1986, reads:

"(C) * * * 'Injury' does not include:

"(1) Psychiatric conditions except where the conditions have arisen from an injury or occupational disease."

In his dissent, Justice Wright opined that this amendment accords with the *Szymanski* and *Toth* decisions.  *Id.*, 28 Ohio St.3d at 416, 28 OBR at 471, 503 N.E.2d at 1387 (Wright, J., dissenting).  He therefore predicted:  "Happily, the effect of this decision will be short-lived in light of the recent action of the General Assembly noted above."  *Id.*, 28 Ohio St.3d at 417, 28 OBR at 472, 503 N.E.2d at 1388.

As Professor Larson observes:  "He is wrong.  The amendment will rule out the mental [cause]-mental [harm] category, which it obviously was designed to do. It will not rule out the mental-physical category, since there the 'injury' is the heart attack, not the psychiatric condition.  That condition is the cause of the injury, not the injury itself."  3 Larson, *supra*, at 7-821 to 7-822, fn. 39.1, Section 42.21(a).